(117 So. 921)

No. 29355.

STATE v. ANTHONY et al.

July 2, 1928.

Amos L. Ponder and Hypolite Mixon, both of Amite, for appellants.

Percy Saint, Atty. Gen., A. L. Ponder, Jr., Dist. Atty., of Amite, and E. R. Schowalter, Asst. Atty. Gen., for the State.

ROGERS, J. The defendants were jointly indicted and tried for murder. They were found guilty, without capital punishment, and duly sentenced. They have appealed, relying upon five bills of exception.

Bills Nos. 1 and 2.—These bills were taken to the action of the trial judge in overruling defendants' objections to certain questions propounded to a witness for the state, with a view of showing the demeanor and appearance of the defendants while in a restaurant the day following the murder. The witness testified, in answer to the questions, that the defendants "were very excited and nervous," which was what attracted his attention, and that there was a "ghastly look on Mr. Anthony's face. It looked like he was scared to death about something."

The demeanor of the person at the time of his arrest, or soon after the commission of the offense, or upon being charged with the crime, is a proper subject of consideration in determining the question of guilt. Thus, we find in Wharton's Crim. Ev. vol. 2, p. 1742, § 922, the following statement of the law, viz.:

"Circumstances subsequent to the homicide are relevant where they serve to explain the transaction, or to point to the accused as the guilty agent. * * * The conduct, appearance, and declarations of the accused at the time of the discovery of the homicide with which he is charged are relevant against him."

And in 16 C. J. p. 753, § 1545, an exception to the rule excluding opinion evidence is set forth as follows, viz.:

"A witness who bases his judgment on appearance, such as facial expression, tone of voice, or manner, may testify as to certain mental states of a person whom he has observed. Thus he may testify that the person under his observation appeared to be angry, excited, despondent, surprised, or frightened. But the inference of a witness as to the mental state of a person is rejected, where it is conceived rather than perceived."

Counsel for appellants does not dispute the right of the state to show by the witness what the defendants said, did, and looked like, but contends that he cannot state what his conclusions are from those things, and counsel particularly objects to the word "ghastly," as used by the witness in describing the facial expression of the defendant Anthony. Counsel concedes that, if the witness had used the expression that the defendant in question was "pale," and that he was excited or seemed to be worried about something, the testimony would not have been objectionable.

The testimony of the witness was based upon his perception, and not upon his conception. He related certain things he had observed, which involved matters of fact rather than matters of opinion. In using the word "ghastly," he did nothing more than attempt to describe the lack of color in the face of the defendant Anthony. He might have used the term "pale," or "pallid," which would, perhaps, have accomplished his purpose: but he used the term "ghastly," with the view, no doubt, of disclosing the fact that defendant's face was ghostlike in appearance.

The fact that the defendants were excited and nervous, and that the expression on the face of one of them was ghastly, and that he appeared to be frightened, at the time referred to by the witness for the state, standing by itself, might not justify an inference of guilt; but it was, nevertheless, admissible in order that the jury might consider its connection with other facts shown on the trial of the case.

Bill No. 3.—The evidence offered on the

trial of the case was purely circumstantial. The body of the deceased was found in the woods near two public roads. The theory of the prosecution was that the deceased had been murdered, with robbery as the motive. The defendants sought to show that, a few days prior to the killing, the defendant Anthony had lent the deceased $100 in order that he might proceed to the town of Amite for the purpose of buying a team of horses. Their contention was that, if Anthony did lend the deceased this money, there was an entire absence of motive on the part of the defendants to commit the murder and robbery, since the borrowed money formed the larger portion of the money in possession of the deceased at the time he was murdered, if in point of fact he was murdered. The defendant Anthony was permitted to testify that he had lent the money to the deceased at the time and for the purpose stated. When, however, he attempted to corroborate his testimony by the testimony of one Joseph Chambers to the effect that the deceased had on the Thursday night previous discussed the matter of his intended purchase of the team, and told him that he intended to borrow the money for that purpose from Anthony, the testimony, on objection of the state, was excluded as being hearsay. The present bill of exception was reserved to the ruling of the trial judge.

In Greenleaf on Evidence, vol. 1, at page 127, appears the following statement of the law, viz.:

"Before we proceed further in the discussion of this branch of evidence, it will be proper to distinguish more clearly between hearsay evidence and that which is deemed original; for it does not follow, because the writing or words in question are those of a third person, not under oath, that therefore they are to be considered as hearsay. On the contrary, it happens in many cases that the very fact in controversy is whether such things were written or spoken, and not whether they were true; and in other cases, such language or statements, whether written or spoken, may be the natural or inseparable concomitants of the principal facts in controversy."

In Wharton, Crim. Ev. vol. 1 (10th Ed.) § 237, p. 467, the rule is laid down as follows, viz.:

"Ex parte declarations of a deceased person as to his physical or mental condition, purpose, or intention, are called natural evidence, and are admissible as original evidence. So declarations of an intention to commit suicide are admissible upon the trial of one charged with murdering the deceased. Likewise as to existing bodily sensations. Statements made by a person on leaving home, on a train, are admissible to show purpose to leave."

See, also, to the same effect, State v. Vial, 153 La. 883, 95 So. 796; State v. Dunn, 161 La. 532, 109 So. 56.

Our conclusion is that the testimony is original and not hearsay evidence, and that the action of the trial judge in excluding it constitutes reversible error.

The decision on rehearing in State v. Morgan, 145 La. 585, 82 So. 711, is not in conflict with our present ruling.

■■ Bill No. 4.—This bill was taken to the action of the trial judge in sustaining an objection of the state, and refusing to permit the defendants' witness one Horace Chambers to testify that on the day prior to the alleged homicide, the defendant Anthony had told the witness that he was going to lend the deceased $100. The objection was that the statement was self-serving and hearsay. We think it was properly maintained. An accused cannot, as a defense, relate a conversation held by him with a third person, nor can the third person be permitted to testify concerning such conversation. This character of testimony is inadmissible for two reasons, to wit, it is both hearsay and self-serving. State v. Brown, 111 La. 170, 35 So. 501.

Bill No. 5.—This bill was reserved to the overruling of defendants' motion for a new trial. In view, however, of our conclusion that the case must be remanded, it is unnecessary to discuss the bill.

For the reasons assigned in our ruling on bill of exception No. 4, the conviction and sentence are set aside, and the case is remanded to the district court for a new trial.

O'NIELL, C. J., concurs, but considers bills No. 1 and No. 2 also well founded.