346 So.2d 664 (1977)
STATE of Louisiana
v.
Lester SIMS.
No. 58913.
Supreme Court of Louisiana.
May 16, 1977.
Rehearing Denied June 17, 1977.
*665 Michael C. Palmintier, Due, Dodson & de Gravelles, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Doug P. Moreau, Asst. Dist. Atty., for plaintiff-appellee.
SANDERS, Chief Justice.
Lester Sims and Phillip Schamburger, Jr., were charged by bill of information with armed robbery, a violation of LSA-R.S. 14:64. Subsequently, defendant's case was severed from that of his co-defendant, and, after trial by jury, Lester Sims was found guilty as charged and sentenced to serve thirty-five years in the custody of the Louisiana Department of Corrections. LSA-R.S. 15:529.1. On appeal, defendant relies upon four assignments of error for reversal of his conviction and sentence.

ASSIGNMENT OF ERROR NO. 1
Defendant contends that the trial court erred in severing his case from that of his co-defendant, Phillip Schamburger, Jr. He argues that either the court lacked authority to sever the cases under LSA-C.Cr.P. Art. 704, or if the court had authority, the court abused its discretion in this case because the severance caused prejudice to him.
Both defendants moved for a severance on May 13, 1976, alleging that their defenses would be antagonistic and that any testimony given by either of them would implicate the other. Neither defendant offered any evidence to support his allegations consequently, the court denied the motion. Later, on May 24, the date scheduled for the joint trial, the State informed the court that it intended to introduce inculpatory statements made by the defendants. In these inculpatory statements, each defendant implicated the other. The State called attention to the problems which would arise upon their introduction into evidence, and, to avoid any possible violation of the defendants' constitutional rights, the State offered either to introduce only limited portions of the confessions, deleting the inculpatory references to the other defendant, or to sever the cases. By severing the cases, each confession could then be introduced in its entirety.
Defendants refused to consent to introducing limited portions of the confessions, arguing that they must be admitted in their entirety or not at all. After considering the matter during a brief recess, the trial court reversed its earlier denial of defendants' motion to sever and ordered the State to sever the cases.
Defendant objected to the court's severing the cases on the ground that the defense had been structured on the assumption that there would be a joint trial. The court overruled defendants' objection and ordered the trials to proceed. On May 27, three days after the severance was ordered, this defendant's trial began.
Louisiana Code of Criminal Procedure Article 704 provides:
"Jointly indicted defendants shall be tried jointly unless:
"(1) The state elects to try them separately; or
"(2) The court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance."
The defendants requested a severance early in the proceedings, which the court denied for lack of evidence in support *666 of their allegations. When information was disclosed which made it evident that the defendants' right of confrontation, guaranteed by the Sixth Amendment of the United States Constitution, would be jeopardized by a joint trial, the court reversed its earlier ruling. In our opinion, there was no abuse of discretion.
Defendant was in no way prejudiced by the severance. The court ordered the severance three days before defendant's trial, which allowed defendant the opportunity to re-examine his trial strategy. In a similar case, we found no prejudice to defendant when the severance was ordered three days prior to the trial. State v. Thompson, 256 La. 1019, 240 So.2d 899 (1970).
Moreover, defendant's contention that the severance was prejudicial because it necessitated a drastic change in trial strategy is untenable in light of the fact that he failed to request a continuance on this ground. Under Louisiana Code of Criminal Procedure Article 712, a continuance would have been the appropriate vehicle to rectify any harsh effects which ordering the severance may have caused to defendant. In view of the facts that defendant has neither proven nor shown any prejudice suffered by him and he requested no continuance, we find his arguments to be untenable.
Assignment of Error No. 1 is without merit.

ASSIGNMENT OF ERROR NO. 2
Defendant alleges that the trial court erred in denying his motion to suppress in which he argued that statements he made after his arrest but before he was advised of his constitutional rights were inadmissible under the United States Supreme Court holding in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 694 (1966). Further, he contends that these statements tainted subsequent confessions, made after he was advised of and waived his Miranda rights, and rendered these confessions likewise inadmissible.
Defendant, on the opening day of his trial, filed a motion to suppress which was heard out of the jury's presence. The following facts were established at the hearing on the motion: Sergeant Cupit, the arresting officer, testified that, as he was driving into the parking lot of the Stop and Go store, he noticed two men leaving the building. As the first man, identified as Phillip Schamburger, Jr., approached, he pointed a shotgun at the officer. Cupit managed to disarm Schamburger, drew his gun on him, and placed him against the trunk of a car. He then pointed his gun at this defendant who had entered his car and started the engine. Defendant, following the officer's orders, got out of his car with his hands up and began to walk slowly toward Cupit. At this moment Schamburger bolted and escaped through an alley near the store. Believing the alley to be a dead end, Cupit elected to secure defendant's arrest rather than to pursue Schamburger. As defendant was approaching the officer, he asked why he was being arrested since he had not done anything wrong. While the record is somewhat unclear, it seems that Cupit responded: "Well, what were you doing here?" and advised defendant that he was under arrest for armed robbery. Defendant replied that he just happened to be in the store when the offense occurred. Cupit then handcuffed him, and after assistance arrived, turned him over to Sergeant Guidry and Detective Kennison.
Sergeant Guidry testified that he asked defendant his name, and defendant identified himself. After a cursory search of the area, Guidry returned to defendant and advised him of his rights. He then requested that defendant tell what had transpired, and defendant responded that he had gone to the store to purchase a magazine. The officer testified that defendant's demeanor, at this point, indicated that he was about to change his story and, perhaps, implicate himself in the robbery; the officer testified that, for this reason, he then repeated the Miranda warnings to the defendant. In response to a remark by Guidry to "be straight with him," defendant confessed his *667 involvement in the robbery. He was then taken to an interrogation room at the Detective Office where, after being advised of his rights for a third time and after signing the waiver of rights form, he again confessed. Detective Kennison's testimony confirmed Guidry's testimony.
The United States Supreme Court, in Miranda v. Arizona, supra, held that the prosecution may not use statements, either inculpatory or exculpatory, which stem from the custodial interrogation of a defendant unless it demonstrates the use of procedural safeguards effective to secure the right against self-incrimination. Custodial interrogation was defined as questioning by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any way. However, the court emphasized that volunteered statements were not affected.
Other decisions since Miranda v. Arizona, supra, have held that spontaneous, unsolicited and voluntary remarks made by an arrested person, prior to his being advised of his rights, are admissible in evidence and do not taint subsequent inculpatory statements given by the defendant. State v. Holmes, La., 305 So.2d 409 (1974); State v. Richey, 258 La. 1094, 249 So.2d 143 (1971); State v. Hall, 257 La. 253, 242 So.2d 239 (1970). In a strikingly similar situation, protestations of innocence, made by two defendants as they were being arrested but before any Miranda warnings were recited to them, were ruled admissible as spontaneous declarations procured without custodial interrogation. State v. Hall, supra. We find these decisions controlling here.
Assuming that there was a full custodial arrest, because the officer was directing defendant toward him at gunpoint, the issue becomes whether or not there was an interrogation which would necessitate Miranda warnings. Defendant's question as to why he was being arrested and his statement denying any wrongdoing were volunteered by him without any solicitation by the officer. In fact, the officer's question was responsive to the conversation initiated by the defendant. We find that, not only was the question responsive, but in the context of the exchange between the defendant and the officer set out in the record, it was rhetorical. The defendant's statements made prior to his being advised of his rights were not, therefore, the fruit of custodial interrogation but rather were voluntary, spontaneous remarks admissible at his trial.
Since these statements were not obtained in violation of Miranda v. Arizona, supra, they do not taint defendant's subsequent confessions.
Assignment of Error No. 2 is without merit.

ASSIGNMENT OF ERROR NO. 3
Defendant alleges that the trial court erred in overruling his objection to alleged opinion evidence elicited by the State from a witness. He argues that the testimony expressed conclusions drawn by the witness regarding the subjective attitude of the defendant and, therefore, violated LSA-R.S. 15:463 which provides:
"Except as otherwise provided in this Code, the witness can testify only as to facts within his knowledge, and neither as to any recital of facts heard by him, nor as to any impression or opinion that he may have."
The prosecution called to the stand the victim of the robbery, Darrell Pyeatt, who was asked whether defendant was startled when Schamburger entered the store brandishing a shotgun. Arguing that the question called for opinion testimony, defendant objected to it, but his objection was overruled. Pyeatt then testified that, when Schamburger entered the store with the gun, defendant's face reflected no visible surprise, shock, or curiosity, but rather his expression appeared passive. He stated that defendant followed Schamburger with his eyes and that he followed him out of the store when the robbery was completed.
As a general rule, a witness may not testify on the basis of a pure opinion; however, he may state natural inferences from facts which he had observed. State v. Davalie, *668 La., 313 So.2d 587 (1975). Pursuant to this exception, testimony as to whether a witness felt that a drunk defendant knew what he was doing when he committed a crime has been permitted, based upon the rationale that the response to the question was based on personal observations of the witness. State v. Neal, La., 321 So.2d 497 (1975). In an early case a witness's remark that defendant looked "ghostly" was held to be admissible, since it merely stated a perception of the facial expression of the defendant. State v. Anthony, 166 La. 793, 117 So. 921 (1928). In a similar vein, testimony as to whether defendant was in a "bad humor" was permitted because no skill was required to observe whether an individual was in a quarrelsome mood. State v. Ussery, 178 La. 593, 152 So. 302 (1934).
Applying these standards to the present case, Pyeatt's testimony describes defendant's physical facial expression when the crime was being committed. The description of defendant's appearance as passive and without shock or curiosity recited personal observations of the victim from which a natural inference could be drawn that defendant was in no way startled by what transpired in the store. In the context of the record, the testimony is not impermissible opinion testimony violation of LSA-R.S. 15:463.
Assignment of Error No. 3 is without merit.

ASSIGNMENT OF ERROR NO. 4
Here, defendant alleges that the trial court erred in permitting the district attorney to comment on defendant's failure to testify in his own behalf during closing argument.
The district attorney, during his closing argument, emphasized that no evidence had been produced by the defense which rebutted defendant's involvement in or knowledge of the robbery. When these statements were made, defendant did not object nor did he move for a mistrial under LSA-C.Cr.P. Art. 770. In fact, the impropriety of the remarks was not raised by defendant until the hearing on his motion for a new trial. At that time he asserted that the references by the State to the failure of the defense to produce refuting evidence on various key issues of the case constituted impermissible comment on his failure to testify on his own behalf in violation of the fifth amendment and thereby necessitated the granting of a new trial. The trial court denied the motion.
Louisiana Code of Criminal Procedure Article 841 provides:
"An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.
"The requirement of an objection shall not apply to the court's ruling on any written motion."
We have held that the failure of the defendant to object at the time that the allegedly improper references in the State's closing argument were made or to request a mistrial constitutes a waiver. State v. Clark, La., 332 So.2d 236 (1976); State v. Watley, La., 301 So.2d 332 (1974). When, as in the instant case, defendant fails to seek corrective measures timely, he cannot secure appellate relief.
Furthermore, if the merits of defendant's contention are examined, the argument is without merit. Louisiana Code of Criminal Procedure Article 770 provides in pertinent part:
"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
"* * *
"(3) The failure of the defendant to testify in his own defense; . . .." *669 However, this provision must be read in conjunction with LSA-C.Cr.P. Art. 774:
"The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
"The argument shall not appeal to prejudice.
"The state's rebuttal shall be confined to answering the argument of the defendant."
This Court has consistently recognized the propriety of the State's commenting on the lack of refuting evidence produced by a defendant. State v. Cryer, 262 La. 575, 263 So.2d 895 (1972); State v. Burch, 261 La. 3, 258 So.2d 851 (1972). The district attorney's references in his closing argument were proper since they were confined to the lack of refuting evidence offered by defendant. They did not constitute a comment on his failure to testify in his own defense.
Assignment of Error No. 4 is without merit.
For the reasons assigned, the conviction and sentence are affirmed.