446 So.2d 448 (1984)
STATE of Louisiana
v.
Frank SCOTT, Jr.
No. KA-0618.
Court of Appeal of Louisiana, Fourth Circuit.
February 9, 1984.
Rehearing Denied March 21, 1984.
Writ Denied May 11, 1984.
*449 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., William R. Campbell, Jr., Asst. Dist. Atty., New Orleans, for plaintiff-appellee.
George P. Vedros, Gretna, for defendant-appellant.
Before AUGUSTINE, LOBRANO and WILLIAMS, JJ.
AUGUSTINE, Judge.
In the pre-dawn hours of April 10, 1981, Michael Dugan was shot and killed as he walked with his girlfriend Cynthia Glover near the intersection of First and Clara Streets in New Orleans. Glover later identified Dugan's assailant as Frank Scott, Jr., a former friend of the decedent's. On the basis of this information, Scott was arrested on a warrant and charged with second-degree murder. Following a three-day trial of the matter, a twelve-member jury found the defendant guilty as charged. Accordingly, he was sentenced to serve a term of life imprisonment under La.R.S. 14:30.1.
Scott now appeals his conviction on the basis of the following assignments of error:

FIRST AND SECOND ASSIGNMENTS OF ERROR
Because the factual circumstances which give rise to the defendant's first two assignments of error are so closely intertwined, we shall treat these assignments together.
First Assignment: the district attorney in his opening statement alluded to statements and threats allegedly made by the defendant.
Second Assignment: the trial judge committed reversible error in failing to grant a mistrial when the State of Louisiana attempted to introduce inculpatory statements allegedly made by the defendant when the State had previously advised defense counsel that there were no such statements.
The trial record reveals that during the opening statement, the prosecutor told the jury that:
"The case is one not only of murder, but of threats, and you'll hear testimony of threats. You'll hear the testimony of Cynthia Glover, of her sister Cheryl Glover..."
Defense counsel's timely objection to these remarks stopped the prosecutor in mid-sentence. The court immediately called both attorneys to the bench for a conference, after which the prosecutor continued with his statement to the jury. He made no further reference to any threats made by the defendant. Later in the trial, however, when the State called Cheryl Glover to the stand, defense counsel anticipated her testimony concerning the alleged threats and entered an objection to any further reference to them. Scott's attorney also moved, for the first time, for a mistrial, apparently on the basis of the remarks made previously by the prosecutor during his opening statement. As of yet, there had been no actual testimony of threats.
In response to the objection and motion, the trial court advised defense counsel that a mistrial would be granted if requested, and allowed counsel a recess to discuss the *450 matter with the defendant. Before the trial resumed, however, Frank Scott, Jr. informed the court of his intention to go forward with the trial. In an open-court colloquy, the trial judge interrogated the defendant to determine whether he understood the meaning of his waiver. Scott answered that his attorney had explained to him the consequences of a mistrial, and that it was his (Scott's) wish to proceed with the trial. Defense counsel then withdrew the motion for mistrial and the objection to the anticipated testimony of Cynthia and Cheryl Glover. The Glovers' later testimony concerning the threats made against them by Scott was accepted without objection.
The defendant contends that the prosecutor's reference in his opening statement to testimony of threats by the defendant violates C.Cr.Proc. Art. 767, which provides:
The State shall not, in the opening statement, advert in any way to a confession or inculpatory statement made by the defendant.
The appellant argues that a threat is an "inculpatory statement", and that the prosecutor's reference to "threats" in his opening statement violates the above article.
In State v. Labostrie, 358 So.2d 1243 (La.1978), it was held that, as used in the above provision, "inculpatory statement" refers to the out-of-court admission of incriminating facts made by a defendant after the crime has been committed. (Emphasis added). See also State v. Miles, 339 So.2d 735 (La.1976); State v. Brumfield, 329 So.2d 181 (La.1976); State v. Williams, 326 So.2d 815 (La.1976). Thus, although a threat may be an incriminating fact, it does not, of itself, constitute an admission of incriminating facts. Therefore, a prosecutor's mention of a defendant's threats does not violate Art. 767, supra.
Alternatively, the defendant argues that the prosecutor's remarks were grounds for mistrial under C.Cr.P. Art. 770(2), which provides:

Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(2) another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. (Emphasis added).
The defendant contends that the trial court erred in failing to order a mistrial under the above article, and that his own express, in-court waiver of mistrial was invalid, having been the product of his ignorance of the consequences.
The defendant cannot prevail on these grounds, for although a prosecutor's remark concerning the defendant's other crimes warrants mistrial if evidence of those crimes is inadmissible, Art. 770(2), a defendant's failure to request corrective action forecloses any later claim of prejudice. State v. Baylis, 388 So.2d 713 (La. 1980); State v. Sims, 346 So.2d 664 (La. 1977); State v. Nero, 319 So.2d 303 (La. 1975). In the present case, the defendant did not merely fail to request corrective action; he entered a considered, deliberate rejection of the trial court's proffered mistrial. And although a trial judge is not required to conduct a "Boykinization" of sorts every time cause for mistrial arises under Art. 770, the defendant was offered that protection in this case. The record affirmatively establishes that Scott knowingly withdrew his motion. He thereby waived any claim of error on appeal.
In the same vein, Scott's withdrawal of his objection to the anticipated testimony concerning his threats against the Glovers, and his later failure to object when the Glovers actually testified foreclose any later claim of prejudice. La.C.Cr.P. Art. 841;[1]State v. Johnson, 389 So.2d 372 (La. 1980).
*451 Defendant's first two assignments of error lack merit.

THIRD ASSIGNMENT OF ERROR
The defendant claims that the trial court erred by admitting certain photographs into evidence at the trial. He contends that two color photographs of the victim at the scene of the crime are gruesome and lack any probative value.
"The ruling of a trial court with respect to the admissibility of allegedly gruesome photographs will be disturbed only if the prejudicial effect of the photographs clearly outweighs their probative value. State v. Tonubbee, 420 So.2d 126, 133 (La.1982); State v. Landry, 388 So.2d 699, 703 (La. 1980), cert. denied, 450 U.S. 968, 101 S.Ct. 1487, 67 L.Ed.2d 618 (1981)." State v. Germain, 433 So.2d 110 (La.1983).
It is well-settled that post-mortem photographs of murder victims are admissible to prove corpus delecti, to corroborate other evidence establishing the cause of death, and to provide positive identification of the victim. State v. Brogdon, 426 So.2d 158 (La.1983).
The photographs in question were admissible to corroborate identification of the victim. Although the photographs are disagreeable, they are not so gruesome that the prejudicial effect clearly outweighs their probative value.
Defendant's third assignment of error lacks merit.

CONCLUSION
For the reasons assigned, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] La.C.Cr.P. Art. 841 provides, in part:

An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.