635 So.2d 416 (1994)
STATE of Louisiana
v.
Milton TAYLOR.
No. 91-KA-2496.
Court of Appeal of Louisiana, Fourth Circuit.
March 29, 1994.
*417 Harry F. Connick, Dist. Atty., Karen E. Godail, Asst. Dist. Atty., New Orleans, for appellee.
M. Craig Colwart, Orleans Indigent Defender Program, New Orleans, for defendant.
Before BYRNES, WALTZER and LANDRIEU, JJ.
LANDRIEU, Judge.
On April 13, 1989, defendant, Milton Taylor, was indicted by a grand jury for the second degree murder of Samuel Moses,[1] a *418 violation of La.Rev.Stat.Ann. § 14:30.1 (West pre-1993 amendment). A Motion to Suppress Confession and/or Inculpatory Statements was filed on May 19, 1989. Following a hearing on September 8, 1989, the trial court sustained the defendant's motion to suppress his oral statement but denied the suppression of his written statement. A twelve-member jury on January 25, 1991 found the defendant guilty of manslaughter, a lesser included offense.
After reviewing a pre-sentence investigation report, the trial court, on April 26, 1991, sentenced the defendant to twenty-one (21) years at hard labor. On appeal, the defendant raises five assignments of error for the reversal of his conviction and sentence. We affirm.

FACTS
On the night of February 10, 1989, New Orleans Police Department Homicide Detective Troy Savage responded to a call of a shooting in the 6400 block of Isidore Street, New Orleans. Upon arriving at the scene, the officer retrieved the victim's clothing, five spent nine millimeter casings, and three bullets. After securing the area, the officer learned that the shooting victim, Samuel Moses, was at Jo Ellen Smith Memorial Hospital. Detective Savage's investigation led to the development of two suspects, Michael Carter and someone named Milton a/k/a Bronco or Bronsy. Four days later, the defendant was located at the Pinnacle Hotel in Gretna. Detective Savage arrested the defendant and confiscated a machine gun found in his hotel room. While at the hotel, the defendant informed the officer that his name was Tony Smith and he was seventeen years of age.[2]
Later that same day, Detective Savage received a phone call from Mrs. Lilly Smith, the defendant's aunt. Mrs. Smith informed the officer that the defendant's real name was Milton Taylor and that she was his legal guardian. Thereafter, Detective Savage retrieved the defendant from the Riverside Juvenile Center and brought him to the Homicide Office where they met Mr. and Mrs. Smith. Detective Savage gave the defendant his Miranda rights in front of Mr. and Mrs. Smith and obtained a formal written statement from the defendant.
According to the statement made by the defendant, the victim, Moses, owed Michael Carter money for drug purchases previously made. Moses loaned Carter his car as compensation for these deals. When the defendant borrowed the car from Carter, he accidentally wrecked it by running into a tree. Moses insisted on full payment for the damages. The defendant and Carter paid Moses $700, but Moses insisted on more money. Thereafter fistfights occurred between the defendant, Carter and Moses whenever they encountered one another.
On the evening of the shooting, the defendant, Carter, and two other friends, Louis Scott and Crystal Butler, went to an area in Algiers known as the "Cutoff" to get a sandwich. Upon arriving at the intersection of Isidore and Boyd Streets, they parked the car. Defendant and Carter exited the car while Scott and Butler remained inside. Defendant and Carter spotted Moses, and the defendant identified Moses to Scott and Butler as the person who was beating him up. The defendant returned to the car and retrieved a gun. Moses then grabbed Carter around the neck and began walking him backward while poking him in the side as if he (Moses) was using a gun to make the defendant back away.
The defendant told Carter to move away. A short struggle ensued between Carter and Moses, and Carter was able to break away. Moses then began to flee. Defendant pursued Moses and shot him in the leg, causing him to fall to the ground. He then approached Moses and shot him three more times while he lay on the ground. After the defendant and Carter returned to the car, the four of them drove to a nearby shopping *419 center where Carter and the defendant purchased more bullets.
Dr. Paul McGarry, the coroner who performed an autopsy on Moses, stated that the victim died from massive bleeding from the three gunshots wounds to the upper right leg and thigh. These wounds opened up the major artery in the leg. One of these wounds also penetrated the left leg and opened up a major vein in the left leg. Dr. McGarry opined that the victim was face down when he received the three gunshot wounds to the right thigh. He noted that the wounds had come from behind the victim. The victim also sustained a gunshot wound to the right lower leg above the ankle.
Carter was arrested by the New Orleans Police Department on February 13, 1989. He denied knowing anything about the shooting. At trial, Carter was called as a defense witness but asserted his Fifth Amendment privilege.
Lillie and Sylvester Smith, the defendant's aunt and uncle, testified about the defendant's slow mental ability and his diagnosis of depression. Katrina Glapion and Roxie Richardson testified, on behalf of the defense, as to prior acts of aggression by Moses upon the defendant.

DISCUSSION

ERRORS PATENT
Our review of the record reveals no errors patent.

ASSIGNMENT OF ERROR NO. 1
In his first assignment of error, the defendant contends that the trial court erred in failing to grant a mistrial when the State, in its opening statement, and Detective Savage, during his direct testimony, referred to the defendant's oral confession which had been suppressed by the trial court.
In the part of the opening statement to which the defendant objects, the State was informing the jury about the defendant's arrest at the Pinnacle Hotel. The following is the pertinent part of that opening statement:
Through the police officers' investigation, they learned that a man that was wanted, this is Gretna Police, they learned that a man that was wanted in New Orleans for a murder was in fact in the Pinnacle Hotel on the westbank, Pinnacle Hotel on the westbank.
Gretna Police officers arrived. Police Officer Ellis Bealer, (spelled phonetically), is going to testify. He's going to testify that he went to the room, saw this individual, Milton Taylor, with another man and two women, they are not involved in this case. He went to the room, and the defendant gave his name as Tony Smith.
BY MR. KOHNKE:
Your Honor, mayapproach the bench, please?
BY THE COURT:
Yes.
(OFF THE RECORD DISCUSSION)
BY MR. JORDAN:
Tony Smith. Detective Savage, Troy Savage, who handled the investigation, went to the motel room. This room was secured by the Gretna Police, they didn't want to touch anything. They did see, lo and behold, the nine millimeter intertech sticking out from underneath the bed, in between the mattresses. Detective Savage went there and retrieved the gun and he took the defendant into custody.
Now, he thought the defendant's name was Tony Smith. They knew there was a Bronco and a Bronscy involved in this murder. Defendant's guardian was notified and at the homicide office the defendant, in the presence of his guardian, made a statement.
The defendant did not object to the opening statement at this point. He waited until the next day, during Detective Savage's testimony, to object and seek a mistrial on the basis of the state's remarks concerning the defendant's statement that his name was Tony Smith. At that time, the defendant also objected to and sought a mistrial as a result of Detective Savage's statement that the defendant initially identified himself as Tony Smith. The trial court overruled the defendant's objections and denied his requests for a mistrial.
*420 An objection to alleged prejudicial remarks or conduct of the prosecutor must be contemporaneous. State v. Anderson, 333 So.2d 919 (La.1976). The contemporaneous objection rule exists, not only so that a trial judge may correct the error at the time it is made, but it also serves notice in the record that the complained of conduct was so noticeable as to create prejudice in the minds of the jurors. State v. James, 459 So.2d 1299 (La.App. 3d Cir.1984), writ denied 463 So.2d 600 (La.1984) (citing State v. Miles, 450 So.2d 1067 (La.App. 1st Cir.1984)).
In the instant case, defense counsel did not object during the state's opening statement, but rather requested that he be permitted to approach the bench. An off the record discussion ensued and then the state proceeded onward with its opening statement.
Although an objection made a day after the alleged error does not comport with the contemporaneous objection rule, we will consider the merits of defendant's argument. The defendant argues that the prosecutor's reference that defendant told Detective Savage his name was Tony Smith violated Article 767. Specifically, he maintains that this statement was part of the oral statement that was suppressed by the trial court.
La.Code Crim.Proc.Ann. art. 767 (West 1981) prohibits the state, in its opening statement, from adverting, in any way, to a confession or inculpatory statement made by the defendant. An inculpatory statement has been defined as an "out of court admission of incriminating facts made by a defendant after the crime has been committed." State v. Labostrie, 358 So.2d 1243 (La.1978); State v. Scott, 446 So.2d 448 (La.App. 4th Cir.1984), writ denied 450 So.2d 358 (La.1984). In Scott, this Court held that the prosecutor's remark that the defendant had threatened certain witnesses was not an inculpatory statement. We noted that "although a threat may be an incriminating fact, it does not, of itself, constitute an admission of incriminating facts." Scott, 446 So.2d at 450.
At the suppression hearing, Detective Savage testified that after arriving at the motel, he gave the defendant his Miranda rights and asked the defendant his name and age. The defendant responded by indicating his name was Tony Smith, and he was seventeen years of age. Detective Savage then stated that he asked the defendant about the murder. The defendant's response was suppressed.
Moreover, simply providing police officers with a false name and age may be an incriminating fact, but it does not constitute an admission of an incriminating fact. Accordingly, this assignment is without merit.

ASSIGNMENT OF ERROR NO. 2
The defendant further contends that trial court erred in failing to grant a mistrial when the state referred to the fact that Crystal Butler was under the witness protection program. The alleged comment occurred after the witness had testified and was being dismissed by the trial court.
BY THE COURT:
Any further questions?
BY MR. JORDAN (assistant district attorney):
No further questions, Your Honor.
BY THE COURT:
Step down. Call your next witness.
BY MR. KOHNKE (defense counsel):
Your Honor, I would ask that she remain under subpoena.
BY THE COURT:
Alright, is she under subpoena? Is she under subpoena?
BY MR. KOHNKE:
She is and I would like her to be put under subpoena.
BY THE COURT:
Alright.
BY MR. JORDAN:
May I approach the bench, Your Honor?
BY THE COURT:
Yes.
BY MR. JORDAN:
Can the witness wait right there, she's under witness protection.
BY MR. KOHNKE:
Wait, objection, Your Honor.
BY THE COURT:
Alright, alright, gentlemen

*421 BY MR. KOHNKE:
I ask for a mistrial.
BY THE COURT:
Denied.
A mistrial is a drastic remedy and, except in instances in which a mistrial is mandatory, is warranted only when a trial error results in substantial prejudice to the defendant depriving him of a reasonable expectation of a fair trial. La.Code Crim.Proc.Ann. art. 771 (West 1981); James, 459 So.2d at 1311.
The record indicates that the prosecutor made the statement to the trial judge at the bench. Thus, it appears that the statement was not made within the hearing of the jury. Even if the statement were made within earshot of the jury, there is no evidence that the prosecutor's statement caused substantial prejudice to the defendant depriving him of a fair trial. The defendant admitted in a written confession that he shot the victim. The confession was entered into evidence and read to the jury. Further, eyewitnesses corroborated that the defendant shot the victim as he was fleeing the scene. Accordingly, this assignment is without merit.

ASSIGNMENT OF ERROR NO. 3
The defendant contends that the trial court erred by failing to grant defendant's motion for mistrial when the state elicited a comment from Sylvester Smith on the defendant's runaway status. During the cross-examination of Mr. Smith, the State elicited the following testimony:
Q. Okay. Now, sir, in January of 1988, was Milton Taylor living with you?
A. Yes.
Q. The entire month? In other words, sir, did he ever run away from home that month?
A. Yes, he did.
Q. He did?
A. Ah huh.
Q. For how long?
BY MR. KOHNKE:
Your Honor, I object to this.
BY THE WITNESS:
II can't
BY THE COURT:
The objection is sustained.
BY MR. KOHNKE:
Thank you.
BY MR. JORDAN:
May I approach the bench, Your Honor?
BY THE COURT:
Yes.
BY MR. KOHNKE:
I would like to make a motion, also, Your Honor.
(OFF THE RECORD DISCUSSION)
EXAMINATION BY MR. JORDAN:
Q. And, sir, in April of 1988, was the defendant living with you at that time?
BY MR. KOHNKE:
Your Honor, again I object to the relevancy, I don't
BY THE COURT:
Overruled.
EXAMINATION BY MR. JORDAN:
Q. Was the defendant living with you in April of 1988?
A. April of 1988? Let's see, in April?
Q. In other words, sir
A. I am not sure.
Q. Yes, sir, that's fair.
A. I am not sure.
Q. And, in other words, sir, there were periods of time during 1988, a matter of fact preceding the year
BY MR. KOHNKE:
Objection, Your Honor.
BY THE COURT:
No, no. Now, Mr. Jordan
BY MR. KOHNKE:
This is improper.
BY THE COURT:
No in other words, please, let the witness testify.
EXAMINATION BY MR. JORDAN:
Q. In the year preceding the time that Milton Taylor was arrested, isn't it a fact that he wasn't living with you that entire time, sir?
A. Right.

*422 Q. And isn't it a fact, sir, that for months previous to his arrest you hadn't seen him, that he wasn't living with you?
A. For a period of time he wasn't living livingliving with me, butand that wasand that's due to hishishis running his running away, but my home is waswas really the only home that he that he actually have.
After Mr. Smith had been dismissed, and out of the presence of the jury, the defendant made a motion for mistrial based upon the prosecutor's questioning of Mr. Smith. He contended that evidence indicating the defendant had been a runaway constituted evidence of other crimes. The trial court stated that "[t]o be a run-away is not a crime" and denied defendant's motion.
La.Code Crim.Proc.Ann. art. 770 (West 1981) states, in pertinent part, that ... a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during trial or in argument, refers directly or indirectly to:
* * * * * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.

* * * * * *
In the instant case, the witness' statement that the defendant had runaway was not evidence of another crime. The prosecutor's questions were in response to the witness' testimony as a character witness for the defendant, stating that the defendant was a "very good" boy.
Furthermore, the defendant did not object on the basis that the State was attempting to introduce evidence of other crimes. The record reveals that the defendant objected to the questions on the basis of relevancy. La. Code Evid.Ann. art. 607 (West 1994) provides that a party may question a witness on "any matter having a reasonable tendency to disprove truthfulness or accuracy of his testimony." When a defendant introduces character witness, the State, on cross-examination, may inquire into relative specific instances of conduct. La.Code Evid.Ann. art. 405 (West 1994). The prosecutor's questions were an attempt to impeach the credibility of the witness as to the witness' knowledge of the defendant's character and activities in the months prior to the murder. The witness specifically stated the defendant was "a good boy." Therefore, the prosecutor's questions ascertaining the veracity and/or accuracy of the witness' testimony was relevant. Thus, the trial court also did not err in denying the defendant's motion for mistrial.
This assignment is without merit.

ASSIGNMENT OF ERROR NO. 4
The defendant alleges that the trial court erred in failing to give the jury his requested special instructions on specific intent, reasonable doubt, second degree murder and manslaughter.
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given. La. Code Crim.Proc.Ann. art. 807 (West 1981).
A review of the jury charges reveals that similar instructions sought by the defendant were included in the general instructions provided by the trial court. These instructions succinctly and unequivocally defined reasonable doubt, second degree murder, manslaughter, and specific intent. Accordingly, this assignment is without error.

ASSIGNMENT OF ERROR NO. 5
In his last assignment of error, the defendant argues that the sentence imposed by the trial court was unconstitutionally excessive.
Article 1, § 20 of the Louisiana Constitution of 1974 (West 1977) provides that, "[n]o law shall subject any person ... to cruel, excessive or unusual punishment." A sentence within the statutory limit is constitutionally excessive if it is "grossly out of proportion to the severity of the crime" or is "nothing more than the purposeless imposition of pain and suffering." State v. Brogdon, 457 So.2d 616 (La.1984), cert. denied Brogdon v. Louisiana, 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862 (1985); State v. Caston, 477 So.2d 868 (La.App. 4th Cir.1985). *423 Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.Code Crim.Proc.Ann. art. 894.1 (pre-1991 amendment)[3] and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La.1983); State v. Quebedeaux, 424 So.2d 1009 (La.1982).
Before imposing the sentence, the trial judge reviewed facts adduced at trial which showed the defendant had "accosted the deceased with the express announcement" to kill him. The deceased, who was unarmed, ran and the defendant shot him four times in the back with a machine gun. Because of some confusion over the defendant's criminal history, the judge did not emphasize this point. However, the trial court vehemently emphasized that this was a ruthless and merciless killing which demonstrated that the defendant has a lawless and violent propensity that necessitates the longest possible incarceration of 21 years.
The record clearly reveals that the trial court considered the provisions of Article 894.1 in the imposition of sentence upon the defendant. The court considered the defendant's age, employment history, criminal history, and facts of the crime of which defendant was convicted. The court noted that the defendant shot the victim four times as the victim was fleeing the scene.
The trial court has great discretion in sentencing within the statutory limits. State v. Trahan, 425 So.2d 1222 (La.1983). A sentence should not be set aside as excessive in the absence of a manifest abuse of discretion. State v. Washington, 414 So.2d 313 (La.1982). Further, each case must be decided on its own facts. State v. Humphrey, 445 So.2d 1155 (La.1984).
After reviewing a pre-sentence investigation,[4] the trial court sentenced defendant to the maximum penalty for manslaughter, twenty-one years at hard labor.[5]
Similar cases in which a defendant was convicted of manslaughter have sentenced the defendant to twenty-one years at hard labor. In State v. Harrison, 529 So.2d 78 (La.App. 3d Cir.1988), the defendants were indicted for first degree murder and armed robbery. They pled guilty to the lesser included offense of manslaughter and the State dropped the armed robbery charge. Noting that the defendants had no prior convictions, that prior charges for robbery had been dismissed, and that the defendants shot the victim in the head without provocation and then took his wallet, the trial court sentenced them to twenty-one years at hard labor.
The defendant in State v. Grey, 522 So.2d 1216 (La.App. 4th Cir.1988) was convicted of manslaughter and sentenced to twenty years. The defendant shot five times at his alleged attempted assailants as they retreated and killed a young teenage boy who was an innocent bystander. The defendant shot his weapon down a hallway which led to the front porch of an apartment complex where the victim was standing.
The Third Circuit in State v. Maxie, 594 So.2d 1072 (La.App. 3d Cir.1992), writ denied 598 So.2d 372 (La.1992), affirmed the defendant's sentence of twenty-one years at hard labor on a conviction for manslaughter. The defendant was twenty-two years of age, had no prior criminal record, and was steadily employed. The defendant shot the victim four times with a .22 caliber semi-automatic rifle over an alleged theft of goods valued at $600 which the defendant never reported as stolen. The court found that the defendant overresponded to the victim's alleged actions.
The defendant in State v. King, 563 So.2d 449 (La.App. 1st Cir.1990), writ denied 567 So.2d 610 (La.1990) was initially indicted for second degree murder but was convicted of manslaughter and sentenced to twenty-one years at hard labor. The defendant shot his wife in the face at close range during an argument. This conviction was the defendant's *424 first felony conviction. In affirming the sentence, the court noted that the defendant showed no remorse.
Although the defendant in the instant case knew that the first bullet struck the victim, he continued to shoot the victim three additional times. In his defense, the defendant stated that he and the victim had quarreled many times and, in fact, the victim was armed with a knife. The defendant testified that the victim threatened him with the knife after he fired the first shot. However, the State's witnesses testified that the victim was unarmed.
Considering the defendant shot the victim four times with a machine gun as the victim was attempting to flee, the trial court did not abuse its discretion in sentencing the defendant to twenty-one years at hard labor.
The defendant further argues that the trial court erred in failing to consider his mental illness as a mitigating factor in sentencing him. Case law indicates that mental illness should be used as a mitigating factor in determining sentence. State v. Legendre, 522 So.2d 1249 (La.App. 4th Cir.1988), writ denied 523 So.2d 1321 (La.1988). In State v. Price, 403 So.2d 660, 664 (La.1981), the court found that the defendant had proven that he suffered from a "deranged mental condition," which "[did] not absolve defendant of criminal responsibility for his actions, but [did] tend to excuse or explain his behavior. The court found that that factor should have been weighed in sentencing." Legendre, 522 So.2d at 1252.
In the instant case, the defendant alleges that he suffers from depression and was depressed at the time of the murder. However, no evidence was introduced to show that the defendant was suffering from depression in February 1989. Medical records from Coliseum Mental Center introduced by the defendant disclose that he underwent examination in January of 1988 and was found to be suffering from moderate depression. Dr. Ignacio Medina, one of the psychiatrists appointed to the defendant's sanity commission, testified at trial that the defendant did not exhibit any signs of depression when he examined the defendant on June 29, 1989.
As the defendant failed to prove the existence of the mental illness at the time of the crime, the trial court did not err in not considering defendant's alleged mental illness as a mitigating circumstance in the imposition of sentence. Accordingly, this assignment is without merit.
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Taylor's co-defendant, Michael Carter, indicated by the same grand jury, pled not guilty on May 15, 1993. A motion to sever the trial was granted on July 31, 1990. Carter was nolle prosequied by the State on February 14, 1991.
[2] Detective Savage advised the defendant of his Miranda rights prior to learning his name and age. Thereafter, when questioned about the shooting, Taylor proceeded to make an oral statement which was suppressed by the trial court. Because the defendant's true age was only 16, the trial court ruled an adult had to be present with him when he made the oral statement. Such was not the case here.
[3] The Louisiana Sentencing Guidelines, effective January 31, 1992, were not in effect at the time the defendant was sentenced.
[4] The pre-sentence investigation report did not recommend probation.
[5] At the time the defendant was sentenced, the maximum penalty under § 14:31 was twenty-one (21) years as opposed to the forty (40) years it is today.