459 So.2d 1299 (1984)
STATE of Louisiana
v.
Nolan JAMES, Jr.
No. KA 84 0351.
Court of Appeal of Louisiana, First Circuit.
November 20, 1984.
*1304 Aubert Talbot, Dist. Atty., Napoleonville, for state of Louisiana, plaintiff, appellee.
Alan Robert, Gonzales, for defendant, appellant.
Before GROVER L. COVINGTON, C.J., and LOTTINGER and JOHN S. COVINGTON,[*] JJ.
LOTTINGER, Judge.
On February 12, 1979, Sidney Caswell and his wife, Theresa, picked up defendant who was hitchhiking on I-10 in Ascension Parish. When their vehicle reached an exit in East Baton Rouge Parish, defendant pulled a gun on the Caswells and ordered them to return him to Ascension Parish. A short time later, defendant shot both of the Caswells. Theresa Caswell died as a result of her injury. Defendant was stabbed by Sidney Caswell but took over operation of the Caswell vehicle. After the vehicle was driven into a ditch in Ascension Parish near the Sorrento town hall, the disabled vehicle, defendant, and the Caswells were discovered by an off-duty sheriff's deputy. Defendant was arrested after Sidney Caswell related these events to law enforcement officers.
Defendant was indicted by grand jury on April 17, 1979 and charged with the first degree murder of Theresa Caswell in violation of La.R.S. 14:30. Defendant pled not guilty to the charge. In court prior to trial, the state amended the grand jury indictment to second degree murder, a violation of La.R.S. 14:30.1. Defendant was found guilty of the amended charge and sentenced to life imprisonment, without benefit of probation, suspension of sentence, or eligibility of parole for a period of forty years. From this conviction defendant urges 28 assignments of error.

ASSIGNMENTS OF ERROR NOS. 1 AND 2
By means of these assignments, defendant contends that the trial judge erred in allowing the prosecutor to amend the grand jury indictment, which charged defendant with first degree murder, to a charge of second degree murder.
Art. 1, § 15 of the 1974 Louisiana Constitution provides "that no person shall be held to answer for a capital crime or a crime punishable by life imprisonment except on indictment by grand jury." Under the law applicable to defendant, second degree murder is a crime punishable by life imprisonment and, therefore, is a crime the prosecution of which must be instituted by a grand jury. State v. Stevenson, 334 So.2d 195 (La.1976).
However, the right of district attorneys to amend indictments to charge lesser offenses has been recognized by our courts. State v. Gilmore, 332 So.2d 789 (La.1976). The state may abandon the charge for a lesser crime and no formal indictment is necessary for that purpose. State v. Edwards, 287 So.2d 518 (La.1973).
In this case the prosecutor properly amended the indictment in open court before trial began to a legislatively designated *1305 responsive offense. La.Code Crim.P. art. 814. Amending the indictment from first degree murder to the lesser charge of second degree murder did not prejudice the defendant's constitutional right to have a grand jury institute prosecution for that crime. State v. Stewart, 389 So.2d 1321 (La.1980).
These assignments are without merit.

ASSIGNMENT OF ERROR NO. 3
Defendant contends that the trial court erred in denying defendant the right to assist in his defense and act as co-counsel in the actual trial.
However, assignment of error number 3 was not briefed and is thereby considered abandoned. Uniform Rules Courts of Appeal, Rule 2-12.4.

ASSIGNMENTS OF ERROR NOS. 4 AND 6
By means of these assignments, defendant contends that the trial court erred by allowing the district attorney to give his interpretation of the law by long statements and quotes during voir dire examination.
La.Code Crim.P. art. 786 provides that the court, the state, and the defendant shall have the right to examine prospective jurors and the scope of the examination shall be within the discretion of the court. Louisiana courts have recognized that the purpose of voir dire examination is to determine qualifications of prospective jurors by testing their competency and impartiality. It is designed to discover bases for challenges for cause and to secure information for an intelligent exercise of peremptory challenges. The scope of voir dire examination is within the sound discretion of the trial judge and his rulings will not be disturbed on appeal in the absence of a clear abuse of discretion. State v. Murray, 375 So.2d 80, 82 (La.1979).
During voir dire examination, the prosecutor read La.R.S. 14:30.1, the statute defining the crime of which defendant was charged. Such a reading was proper in order to ascertain from the prospective jurors whether they entertained objections to enforcing the law governing second degree murder. State v. Bradford, 298 So.2d 781 (La.1974).
The prosecutor also sought to explain the concept of general and specific criminal intent as it relates to this particular charge. Unlike defense counsel, we note no error with the prosecutor's characterization of the necessary mental state of defendant which the state must demonstrate.
When the voir dire examination is considered as a whole, we find no abuse of discretion on the part of the trial judge. The trial court has wide discretion in these matters and we do not feel the trial court has prejudiced defendant's case.
These assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 5
By means of this assignment, defendant contends that the trial court erred in allowing the state to make an incorrect statement of the mandatory sentence which would be imposed if defendant were convicted of second degree murder. Defendant argues that the jurors were misled by the prosecutor's explanation following his reading of the applicable portion of the statute.
Our review of the record indicates that on three separate occasions during voir dire examination, the prosecutor read the applicable sentencing portion of the statute verbatim. Prospective jurors might have been misled when the prosecutor interpreted the sentencing provision to mean: "... [the] accused could be or would necessarily be sent to the penitentiary for no less than forty years and possibly his full life...". However, even an improper statement of the law during voir dire does not always require reversal. State v. Kohler, 434 So.2d 1110 (La.App. 1st Cir.1983).
Any error was remedied by the following factors:
*1306 (1) The jury venire was present during argument between the district attorney and defense counsel when the objectionable portion of the state's characterization was clarified.
(2) After having been instructed by the trial judge to correctly state the law, the district attorney rephrased his remark as follows: "And what I'm simply saying is a sentence is life imprisonment. That's what the sentence is. And the man is not even eligible for parole for forty years."
(3) The trial court gave the jury a correct and proper charge prior to their deliberation.
For these reasons, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 7
Defendant contends that the trial court erroneously excused a prospective juror, Mr. Frederick, for cause.
Following extensive questioning by both the district attorney and defense counsel, Mr. Frederick expressed continuing reluctance to find defendant guilty, even if all elements of the crime were established beyond a reasonable doubt, because of the harsh sentence which would be mandated by such a determination. Mr. Frederick's answers even to questions designed to rehabilitate were qualified by uncertainty.
The prospective juror thus indicated that he may not be able to accept the law given to him by the court. La.Code Crim.P. art. 797(4). The trial court correctly weighed Mr. Frederick's total performance during the examination. State v. Albert, 414 So.2d 680 (La.1982). There was no abuse of discretion in excusing this prospective juror for cause. See also: La.Code Crim.P. art. 787.
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 8
By means of this assignment, defendant contends that the trial court erred by allowing the district attorney to read only a portion of a criminal statute during voir dire thereby misleading prospective jurors as to the law.
The record reveals that after the prosecutor read section one of La.R.S. 14:20, justifiable homicide, defense counsel objected that the entire statute had not been read. Immediately after the objection, the prosecutor read the remaining portions of that statute. We fail to see in what manner the jury may have been misled or defendant could have been prejudiced.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 10
By means of this assignment, defendant contends that the trial court improperly limited the scope of defendant's opening statement.
In State v. Bell, 263 La. 434, 268 So.2d 610 (La.1972) on rehearing, the Louisiana Supreme Court noted that our present Code of Criminal Procedure does not lay down rules for defendant's opening statement. La.Code Crim.P. arts. 766 et seq. apply only to the state. However, when defense counsel avails himself of the opportunity to make an opening statement under La.Code Crim.P. art. 765(4), the statement must be confined to an explanation of the nature of the defense and the evidence by which he expects to establish it. Wide discretion is vested in the trial judge in his control of the opening statement to confine it within these limits. Id.
In the instant case, the state objected that defense counsel was not explaining the nature of the defense or outlining the evidence which he expected to offer when defense counsel stated:
But basically the state will have one witness, Mr. Sidney Caswell, who is the husband of the person who was killed.
And to be totally honest with you, he is a liar. And he's going to lie to you when he testifies.
The state's objection was properly made. As the trial judge correctly noted, defense counsel was exceeding the scope of the opening statement and was arguing his case to the jury.
*1307 Accordingly, the trial court did not abuse its discretion in sustaining the objection.
This assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 9, 11 AND 13
By means of these assignments, defendant contends the trial court erred: by not granting a mistrial when the district attorney systematically used his peremptory challenges to exclude blacks from the petit jury; by failing to quash the jury venire because a representative number of blacks were not included; and by failing to quash the instant grand jury indictment because Ascension Parish has never had a black foreman of a grand jury.
A defendant is not denied equal protection when the state exercises its peremptory challenges to exclude black persons in a particular case, unless there has been a systematic exclusion of them over a period of time. Defendant must establish a prima facie showing of such systematic exclusion before the state is required to show the exercise of its peremptory challenges was not discriminatory. Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); State v. Brown, 371 So.2d 751 (La.1979).
Defendant has failed to meet this burden. He relies primarily upon the fact that four of the state's five peremptory challenges excluded black persons and has produced no evidence of a history of systematic exclusion. Additionally, it is undisputed one black person served on the jury.
Defendant also argues the jury venire did not represent a fair cross section of the community. The Sixth Amendment guarantees a criminal defendant the right to an impartial jury selected from a group representing a fair cross-section of the community. Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). In Duren v. Missouri, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), the United States Supreme Court stated that in order to establish a prima facie violation of the fair-cross section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.
Defendant has failed to demonstrate any violation of this Sixth Amendment right. After selection of this petit jury, defense counsel put of record his observation that black persons were underrepresented in the venire. However, defendant failed to sustain a prima facie showing as there was no proof as to what portion of the venire was black or that any alleged underrepresentation was due to systematic exclusion.
Finally defendant urges that the grand jury which indicted him was not properly constituted because there has never been a black appointed as foreman of a grand jury in Ascension Parish. He argues that under Guice v. Fortenberry, 661 F.2d 496 (5th Cir.1981) appeal after remand 722 F.2d 276 (5th Cir.1984), once he established a prima facie showing of racial discrimination in the selection of the grand jury foreman the burden shifted to the state to show that no discrimination was present. Guice v. Fortenberry, supra, adopts the test established in Castaneda v. Partida, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977), to determine the necessity for federal relief from discrimination affecting a grand jury, the prerequisites being:
(1) The petitioner must establish that the group against whom discrimination is asserted must be a recognizable, distinct class singled out for different treatment;
(2) The petitioner must prove the degree of underrepresentation by comparing the total population to the proportion called to serve as foreman over a long period of time and;
(3) The petitioner must support the presumption thus created by showing that *1308 the selection procedure is susceptible to abuse or is not racially neutral.
In the instant case, defendant has established the first part of the Castaneda test as the black race is a recognizable distinct class which has been singled out for different treatment. However, proof of the second element for a prima facie showing is lacking, and therefore the presumption has not been established.
The Castaneda test requires that defendant demonstrate the degree of underrepresentation by comparing the proportion of the group in the total population to the proportion called to serve over a significant period of time.
Defendant introduced statistical abstracts to show that blacks make up 27% of the total population of Ascension Parish. He does not establish the number of grand juries which have been convened, nor the number of foreman appointed. In Rose v. Mitchell, 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739, (1979) this statistic was considered most important in establishing a prima facie case.
For the foregoing reasons, these assignments of error are without merit.

ASSIGNMENTS OF ERROR NOS. 12 AND 28
By means of these assignments, defendant contends that he was denied his constitutional right to a speedy trial and that, in the alternative, the time limits for commencement of trial had prescribed. The right to a speedy trial is guaranteed by both the federal and state constitutions. U.S. Const. Sixth Amendment; La. Const. art. 1, § 16 (1974). The right attaches when an individual becomes an accused, either by formal indictment or bill of information or by arrest and actual restraint. State v. Nowell, 363 So.2d 523 (La.1978).
In the present case, defendant was arrested by police on February 12, 1979, and formally indicted by a grand jury on April 17, 1979. Trial on the merits did not commence until June 28, 1983.
In determining whether this constitutional right has been violated, no fixed time period is determinative; rather, the conduct of both the prosecution and the defense are weighed in light of several factors: the length of the delay; the reason for the delay; the defendant's assertion of his right; and the actual prejudice to defendant. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); State v. Nowell, supra.
There is no question but that the delay in the instant case, on its face, appears to be inordinate. However, the inquiry into whether a defendant's constitutional right to a speedy trial has been violated does not end with such a finding. The peculiar circumstances of the case will determine the weight to be ascribed to the length of the delay and the reasons for the delay. State v. Reaves, 376 So.2d 136 (La. 1979).
The next factor to be considered in the speedy trial analysis is the reason for the delay. On April 23, 1979, shortly after defendant was indicted, he filed a motion to quash the indictment and various other pre-trial motions which were heard by the trial court on May 1, 1979. That motion to quash was overruled by the trial court on March 24, 1981.
During this period, defendant was represented by retained counsel, Murphy Bell. Both Bell and district attorney, Aubert Talbot, testified that negotiations with respect to plea bargaining were actively pursued. However, Mr. Bell had difficulty communicating with defendant particularly with respect to the need of entering a plea of not guilty and not guilty by reason of insanity. In addition, a detainer from the District of Columbia had issued against defendant; Mr. Bell, at defendant's request, sought defendant's voluntary departure to face those charges prior to moving forward with the instant prosecution.
When it appeared that a plea bargain could not be reached, defendant was arraigned on March 24, 1981. Defendant pled not guilty and not guilty by reason of *1309 insanity and orally moved for a sanity commission.
Another motion to quash and motion for speedy trial were filed by defendant on March 30, 1981. Trial on the merits was set for April 14, 1981, but was continued with defendant's admittance to the Feliciana Forensic Unit on April 23, 1981.
On June 19, 1981, after hearing testimony of members of the sanity commission, the trial judge found that defendant had the requisite capacity to proceed to trial. However, during the summer of 1981, Mr. Bell suffered a heart attack rendering him physically unable to undertake the rigors of a long trial. On November 13, 1981, Alan Robert was appointed by the trial court to represent defendant. Application for a bill of particulars was filed on December 17, 1981; and numerous pre-trial motions, including a third motion to quash, were filed on June 2, 1982.
Following defendant's evaluation by a second sanity commission, the trial judge found, on July 16, 1982, that defendant had the requisite capacity to proceed to trial. A hearing on all pending pre-trial motions was held on August 5, 1982; the trial judge ruled on those motions on October 22, 1982.
From various rulings of the trial court, including denial of the June 2, 1982 motion to quash, which grounds included speedy trial and prescription, defendant applied for writs to this court. Defendant's application for writs was denied on December 8, 1982. As noted above, trial on the merits commenced on June 28, 1983.
The delay in bringing defendant to trial was due to various circumstances peculiar to this case, including: health problems of retained counsel; numerous pre-trial motions which included the appointment of two sanity commissions; aborted attempts at plea bargaining; difficulty in reaching agreement on trial strategy between defendant and his retained counsel; and desire by defendant to face charges pending in the District of Columbia, prior to being tried on the instant charge. There was no showing that the state deliberately postponed the trial in order to gain a tactical advantage over the defendant.
The third factor to be considered under Barker v. Wingo, supra, is whether or not the defendant asserted his constitutional right to a speedy trial. The record reflects that defendant filed one such motion, pursuant to La.Code Crim.P. art. 701, on March 30, 1981. As noted above, trial on the merits was then set for April 14, 1981. Reasons necessitating continuance of that trial date, as documented by our discussion above, were not chargeable to the state.
Finally, we must consider whether or not the defendant was prejudiced by the delay. No actual impairment of defendant's ability to prepare his case, the most serious form of prejudice normally experienced by an accused whose trial is delayed, has been documented. Defendant generally avers to inability to locate potential unknown witnesses to an alleged argument between defendant and the Caswells. However, failure to identify and locate these alleged individuals is not chargeable to the state where defendant was aware of the charges against him a short time after the incident and immediately retained counsel to represent him. In addition, a detainer issued by the District of Columbia served as an independent basis for interference with defendant's liberty.
Defendant alternatively contends that prescription barred prosecution when trial on the merits was not commenced within two years from the date of institution of the prosecution as required by La.Code Crim.P. art. 578. However, as noted above, defendant filed numerous preliminary pleas which suspended the running of prescription until ruled upon. The state is afforded a minimum period of one year after a ruling to commence the trial, La.Code Crim.P. art. 580. The trial commenced on June 28, 1983, well within a year of the last ruling on several defense motions. Accordingly, the plea, of prescription was correctly overruled.
For the foregoing reasons, these assignments of error are without merit.

*1310 ASSIGNMENT OF ERROR NO. 15
By means of this assignment, defendant contends that the trial court erred when it failed to sequester the jury although defendant requested that this be done.
La.Code Crim.P. art. 791 requires sequestration, before the trial court's charge, only in capital cases. Had the state elected to proceed under the first degree murder charge, compliance with the procedural rules applicable to capital prosecutions would have been required. However, the trial court was not required to sequester the jury in this non-capital, second degree murder prosecution.
In the alternative, defendant contends that the jury should have been sequestered to avoid contact with prejudicial media coverage. During voir dire, the trial court allowed extensive questioning to determine prospective jurors' exposure to any media coverage of this incident. The district attorney, defense counsel, and the trial court agreed to dismissal of any prospective juror who was familiar with the contents of a newspaper article which had appeared on the first morning of the trial. Moreover, the trial court repeatedly charged the jury to avoid reading any newspaper articles, watching television reporting, listening to radio broadcasts or discussing the case among themselves or with others. There is no showing that the jury disregarded the judge's instructions and thereby prejudiced the defense.
This assignment lacks merit.

ASSIGNMENTS OF ERROR NOS. 17, 19, 20, 21 AND 22
By means of these assignments, defendant contends that the trial court erred when it limited the introduction of demonstrative evidence and testimony relative to post traumatic stress syndrome experienced by some Vietnam combat veterans.
Our review of the record indicates that defendant was afforded ample opportunity, through the testimony of experts and individuals who had served in Vietnam with defendant, to present his personal combat experiences and description of the symptoms of this particular disorder to the jury.
In sustaining the state's objection to showing of the film "Good Morning Vietnam", a commercially produced film which was viewed by the trial court, the court noted that defendant did not appear in the film nor did the film depict defendant's own combat experience. The court further noted that scenes in the film that appeal to emotions and prejudice far outweigh whatever redeeming features the film might have in explaining the disorder. It was within the sound discretion of the trial court to refuse to allow the jury to view the film. State v. Sharp, 418 So.2d 1344, (La.1982).
Similarly, the trial court did not err in refusing to permit other witnesses to testify concerning their own personal combat experiences.
In matters of relevancy the trial court has broad discretion, and no reversible error is shown by these rulings. Id.
Accordingly these assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 14
Defendant contends that the trial court erred when it failed to grant a mistrial based on alleged prejudicial remarks made by the prosecutor in the presence of the jury.
The record reveals that during voir dire the prosecutor did mention that defendant had been indicted for first degree murder although the instant prosecution was for second degree murder. An objection to alleged prejudicial remarks or conduct of the prosecutor must be contemporaneous. State v. Anderson, 333 So.2d 919 (La.1976); La.C.Cr.P. art. 770. Objection to the instant remark was not put of record by defense counsel until a later recess by the court.
"The contemporaneous objection rule exists, not only so that a trial judge may correct the error at the time it is made, but it also serves notice in the record *1311 that the complained of conduct was so noticeable as to create prejudice in the minds of those observing it, i.e., the trier of fact." State v. Miles, 450 So.2d 1067 (La.App. 1st Cir.1984).
La.Code Crim.P. art. 770(2) expressly mandates mistrial, on the basis of remarks concerning another crime, only where evidence of such crime would not be admissible at trial. In the instant case, the first and second degree murder charge derive as a different characterization of the same conduct, i.e. the homicide of Theresa Caswell. State v. Washington, 407 So.2d 1138 (La.1981).
Moreover, mistrial is a drastic remedy and, except in instances in which mistrial is mandatory, is warranted only when a trial error results in substantial prejudice to defendant depriving him of a reasonable expectation of a fair trial. State v. Miles, supra. The lateness of defense counsel's request for a mistrial, and the fact that the reference to amendment of the indictment was clearly not so prejudicial as to cause this defendant to be denied a fair trial leads to the conclusion that this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 16
Defendant contends that the trial court erred by allowing the District Attorney to testify at trial without admonishing the jury.
The instant objection arose as to the following colloquy between the District Attorney and defense expert witness, Dr. James Freeman:
Q. Dr. Freeman, the pathologist would not see the clothes of the victim, normally; would that be true?
A. No. Not true. In our group and in most forensic pathology groups they insist on receiving the body clothed just for these type of determinations. And then the materials of clothing are turned over to the sheriff's office with a receipt.
Q. These people didn't ask for them, Dr. Freeman. Would that mean they've made some other mistakes besides not catching powder burn?
A. I would not ask the the, I would insist they be there all the time. I would
Q. But these people did not ask for them, and they didn't get them is what I'm saying.
The prosecutor's statement was testimonial in nature and defense counsel's objection to the district attorney's testifying in this case, was properly sustained. No other relief was requested by defense counsel contemporaneously with his objection. If an objection is sustained, defendant cannot on appeal complain of the alleged error unless at trial he requested and was denied an admonition to disregard or a mistrial. State v. Michel, 422 So.2d 1115 (La.1982). Moreover, the jury was otherwise made aware of the substance of the prosecutor's statement, that state's experts had not previously examined Theresa Caswell's clothing for powder burns, during rebuttal expert testimony.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 18
By means of this assignment, defendant contends that the trial court erred by allowing Dr. Aries Cox, a forensic psychiatrist, to testify as to the differences between the federal and Louisiana standards for establishment of a verdict of not guilty by reason of insanity.
The test for competency of an expert is his knowledge of a subject about which he is called upon to express an opinion. La.R.S. 15:466. The competence of a witness to testify as an expert is a question of fact within the sound discretion of the trial judge and his rulings on this subject will not be disturbed unless clearly wrong. State v. Coleman, 406 So.2d 563 (La.1981).
Dr. Cox was qualified as an expert in forensic psychiatry without objection. He also testified that he was co-instructor of a forensics course taught at Tulane University School of Law. Dr. Cox was one of *1312 three mental health professionals who examined defendant in aid of determining his mental capacity as a plea of insanity had been entered. During the process of explaining his expert opinion, that defendant was not legally insane at the time of the instant offense, Dr. Cox referred to the Louisiana statutory standard provided in La.R.S. 14:14. In addition, Dr. Cox referenced the John Hinkley prosecution in the federal court system and explained that his appreciation of the federal statute was that it differed from the Louisiana standard.
Defense counsel does not contend that Dr. Cox's explanation was an incorrect statement of the law but, rather, that it exceeded his qualified area of expertise. We do not feel that allowing Dr. Cox to testify on the differences in the applicable Louisiana standard and federal standard for insanity was clearly error since it may have helped to promote a proper understanding of the legal test involved and upon what Dr. Cox based his decision. Further, we do not find that discussing the insanity standard under federal law prejudiced defendant's case.
This assignment of error lacks merit.

ASSIGNMENTS OF ERROR NOS. 23, 24 AND 25
Defendant contends that the trial court erred when it permitted the state to present evidence of scientific testing after the state had rested its case in chief.
We pretermit discussion of the prosecution's right to rebut evidence adduced by the defendant. Defense counsel's objections at trial were on the relevancy of the test results and competence of the witness and not the proper scope of the state's rebuttal evidence. A new basis for objection cannot be raised for the first time on appeal. State v. Fowlkes, 352 So.2d 208 (La.1977).
For the foregoing reasons these assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 26
By means of this assignment, defendant argues that the state's evidence failed to prove that he was engaged in the perpetration or attempted perpetration of one of the felonies enumerated in La.R.S. 14:30.1 when Theresa Caswell was killed.
The standard of review for sufficiency of evidence to support a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Review of the record indicates that there was sufficient evidence from which the jury could have concluded that defendant was engaged in the perpetration or attempted perpetration of aggravated kidnapping at the time Theresa Caswell was shot and killed.
The statute defining aggravated kidnapping, La.R.S. 14:44, provides in pertinent part:
Aggravated kidnapping is the doing of any of the following acts with the intent thereby to force the victim, or some other person, to give up anything of apparent present or prospective value, or to grant any advantage or immunity, in order to secure a release of the person under the offender's actual or apparent control:
(1) The forcible seizing and carrying of any person from one place to another....
The record supports the conclusion that defendant forcibly seized and transported the victims from one place to another. Sidney Caswell testified in pertinent part:
We got as far as the Seigen Lane exit at Baton Rouge. [Defendant] said that he was carsick, and wanted to get out of the car. And when I pulled over to let him out, my wife opened the door and he had a gun to her head and said if I didn't turn around and bring him back where I picked him up he was going to blow her brains out.
*1313 On cross examination Sidney Caswell further testified:
Q. Now at this point, you testified in your earlier hearing, that you offered [defendant] the car, you offered him money, you offered him anything he wanted, he says he didn't want any of that; is that correct?
A. That's right.
Q. And he told you, according to your testimony, that he didn't want to hurt anybody, just to turn around and drive him back to where you picked him up; that's your testimony.
A. That's right.
The scope of the phrase "anything of apparent present or prospective value" in the aggravated kidnapping statute is the general broad definition of "anything of value" provided in La.R.S. 14:2(2). State v. Dupre, 369 So.2d 1303 (La.1979). La.R.S. 14:2(2) provides:
"Anything of value" must be given the broadest possible construction, including any conceivable thing of the slightest value, moveable or immovable, corporeal or incorporeal, public or private, and including transportation, telephone and telegraph services, or any other service available for hire. It must be construed in the broad popular sense of the phrase, not necessarily as synonymous with the traditional legal term "property". In all cases involving shoplifting the term "value" is the actual retail price of the property at the time of the offense.
The record supports the additional conclusion that defendant forced the Caswells, by use of a gun, to give up "anything of value," i.e., to convey him free of charge on his return journey to Ascension Parish. Sidney Caswell's testimony reveals that defendant refused to release the Caswells in exchange for money or their car. Defendant insisted that the Caswells remain with him until he was transported to his destination. Finally, the record reveals that Theresa Caswell was shot by defendant, dying as a result of those gun shot wounds, while enroute to defendant's destination.
For the foregoing reasons, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 27
Defendant's twenty-seventh assignment of error is that the state did not prove venue beyond a reasonable doubt. This assignment of error is without merit. La. Code Crim.P. art. 612.
Therefore, the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[*] Judge John S. Covington of the 19th Judicial District Court has been duly elected to this court; that term begins on January 1, 1985. In the interim, the Supreme Court has appointed him to this court pro tempore.