623 So.2d 51 (1993)
STATE of Louisiana,
v.
Robert ROBLOW.
No. 92 KA 1352.
Court of Appeal of Louisiana, First Circuit.
July 2, 1993.
*53 Doug Moreau, Dist. Atty., Office of the Dist. Atty., Baton Rouge, by Don Wall, Asst. Dist. Atty., for plaintiff/appellant.
Kathryn Flynn, Public Defender's Office, Baton Rouge, for defendant/appellant.
Before LOTTINGER, C.J., FOIL and FOGG, JJ.
LOTTINGER, Chief Judge.
Robert Roblow was indicted on two counts of aggravated kidnapping (counts 1 and 2), La.R.S. 14:44; two counts of aggravated rape (counts 3 and 4), La.R.S. 14:42; and one count of armed robbery (count 5), La.R.S. 14:64. Defendant filed a motion to quash counts 3, 4 and 5, arguing venue was improper in East Baton Rouge Parish. The court granted defendant's motion as to counts 3 and 4, thereby quashing defendant's prosecution for two counts of aggravated rape. The court denied the motion as to count 5. After trial by jury, defendant was convicted as charged on counts 1, 2 and 5. The court sentenced him on counts 1 and 2 to serve consecutive terms of life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. The court sentenced him on count 5 to serve a term of fifty years imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence, consecutive to the sentences for counts 1 and 2. Defendant has appealed, urging five assignments of error. The state also has appealed, urging one assignment of error.

FACTS
On the night of October 19, 1991, two sisters (M.S. and S.S.) met their brother and some friends at the Superior Grill Restaurant in Baton Rouge. At about 10:15, the group decided to go to another establishment. While their brother went to get his wallet out of a friend's truck, the two sisters walked to their car. As M.S. unlocked the car door, defendant walked up behind the women. He pointed a gun at S.S. and told the women to get into the car. Threatening to kill the women if they did not comply, he ordered them to drive him to Shreveport. M.S. told defendant she did not know the directions. However, when defendant got angry, she started driving anyway, eventually getting on the Interstate, heading in the wrong direction.
Throughout the trip, defendant repeatedly threatened to kill the women. He showed them the bullets in the gun to convince them the gun was loaded; and he never put down the gun. Throughout the encounter with *54 defendant, the women were afraid to do anything which might result in injury to the other.
When they arrived in Hammond, defendant told M.S. to stop and buy gas. He asked the women if they had any cash or credit cards. In response, S.S. gave M.S. a gas credit card; and M.S. used the card to purchase gas, signing her sister's name. When M.S. got out of the car to buy the gas, defendant warned her that he would kill her sister if she tried to alert the authorities. After getting the gas, M.S. continued driving the car in the same direction. When they crossed the Mississippi state line, defendant became furious and held the gun to M.S.'s throat. Eventually, the women convinced defendant they did not know the directions and calmed him down. M.S. then stopped at a store, got directions, and started driving toward Shreveport.
During the entire trip, defendant drank beer and liquor. Because the victims found defendant to be calmer when he was talking, they asked him questions about himself and his family. Defendant explained he wanted to go to Shreveport to see his children who were in a foster home. He also said that women had always rejected him and that the victims would have rejected him also had he not been armed. The victims repeatedly tried to get defendant to take the car and leave them on the side of the road, but defendant refused.
About an hour outside Bossier City, Louisiana, defendant started telling the victims they were pretty and began fondling M.S. under her skirt. When she resisted, defendant reminded the women he was in charge. When the women asked defendant what he was going to do with them in Shreveport, he indicated he possibly would let them go. Although the women were never certain defendant would release them, they were convinced he would kill them if they did not comply with his demands. At some points, they also believed that if they cooperated with defendant he eventually would release them. Upon arrival in Bossier City (at about 5:30 or 6:00 a.m.), defendant directed the women to the "No Name Motel." He made M.S. go into the office to rent a room and again warned her he would kill S.S. Suspecting they were going to be raped, the women tried to talk defendant out of it. However, he insisted. Continuing to hold the gun and threatening the women, defendant made the women remove their clothing and lie on the bed. While the women cried, he then fondled them, had sexual intercourse with each of them, and performed oral sex upon them.
After raping the women, he told them to dress. He then directed M.S. to drive him to Shreveport. When he decided where he would be dropped off, defendant had M.S. stop the car. He warned the victims not to tell the police, and he threatened to find them if he was arrested. Before leaving, he stole sixty dollars from S.S. M.S. then drove away quickly. She looked for a police station and eventually found a fire station where she was able to summon the police.
Using a letter S.S. had removed from defendant's bag, the police were able to discover defendant's identity. Both women identified defendant in a photographic display and in a physical lineup. They also had no problem identifying him in court.

RULING ON MOTION TO QUASH
In the first assignment of error, defendant claims the court erred when it denied defendant's motion to quash the armed robbery count. In the state's assignment of error, the state contends the court erred when it granted defendant's motion to quash the aggravated rape counts.
The Louisiana Constitution guarantees that a person charged with a crime "is entitled to a ... trial in the parish where the offense or an element of the offense occurred, unless venue is changed in accordance with law." La. Const. art. I, § 16. Article 611 of the Louisiana Code of Criminal Procedure further provides:
All trials shall take place in the parish where the offense has been committed, unless the venue is changed. If acts constituting an offense or if the elements of an offense occurred in more than one place, in or out of the parish or state, the offense is deemed to have been committed in any *55 parish in this state in which any such act or element occurred.
In adopting the "act or element" test contained in the last sentence of article 611, the legislature rejected the "substantial element" test used in previous legislation. See La. Code Crim.P. art. 611, comment (b).
Venue is not an essential element of the offense, rather it is a jurisdictional matter. Objections to venue must be raised by a motion to quash to be ruled on by the court in advance of the trial. At the hearing, the burden is on the state to prove venue by a preponderance of the evidence. La.Code Crim.P. art. 615.
Prior to trial, a hearing was held on defendant's motion to quash the aggravated rape counts and the armed robbery charge. The state and defendant stipulated to certain facts as presented by the prosecutor. In reviewing this assignment of error, we are not limited to considering only those brief facts stated by the prosecutor. It is well established that, in determining whether or not the ruling on a defendant's motion to suppress is correct, an appellate court is not limited to the evidence adduced at the hearing on the motion but may consider all pertinent evidence given at the trial of the case. State v. Beals, 410 So.2d 745, 747 (La.1982). See also State v. Francise, 597 So.2d 28, 30 n. 2 (La.App. 1st Cir.), writ denied, 604 So.2d 970 (La.1992). Although we have found no case extending this rule to the review of a ruling on a motion to quash on the ground of improper venue, we see no reason why the same rationale should not apply. Thus, we also will consider the evidence introduced at the trial in this case in reviewing the court's ruling on the motion to quash.
Defendant argues venue for the armed robbery offense was improper in East Baton Rouge Parish because none of the elements of the crime of armed robbery occurred in that parish. Armed robbery is defined as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La.R.S. 14:64(A). Relying upon the broad definition of "anything of value" (see La.R.S. 14:2(2)) and arguing the phrase includes defendant's theft of transportation services, the state maintains the crime of armed robbery took place in East Baton Rouge Parish when defendant forced the victims to drive him to Shreveport. In its brief, the state argues, "Defendant, while armed with a gun, took the value of the car ride from [M.S.] by coercing her with threats of force." We agree with the state that the definition of "anything of value" is broad enough to include the taking of transportation services as it occurred in this case. See State v. James, 459 So.2d 1299, 1313 (La.App. 1st Cir.1984), writ denied, 463 So.2d 600 (La.1985). However, we do not agree with the state's argument that the taking of the car ride from M.S. in East Baton Rouge Parish established East Baton Rouge as proper venue for the armed robbery charge. The state's argument ignores the indictment. The indictment charged defendant with robbery of S.S., not M.S. (M.S. was the actual owner and driver of the vehicle.)
However, other acts of taking from S.S. occurred which support the armed robbery conviction. In Hammond, defendant forced M.S. to use S.S.'s credit card to charge gasoline; and, in Shreveport, defendant forcibly took cash money from S.S. prior to releasing the women. As to each of these robberies, the elements of "use of force or intimidation" and "while armed with a dangerous weapon" began in East Baton Rouge Parish and continued until the crime was completed in the other parish. The armed robbery was "continuing in the sense that part of the offense [was] committed in one parish and another part in another parish." See La.Code Crim.P. art. 611, comment (d). As the Supreme Court indicated in State v. Dupuy, 319 So.2d 294, 297 (La.1975), "if acts constituting an offense occur in more than one parish, venue is proper in either." Accordingly, we reject defendant's arguments and find no merit in defendant's assignment of error number one.
In connection with this assignment of error, defendant also contends his prosecution for both aggravated kidnapping and armed robbery (with the transportation to *56 Shreveport being the thing of value) violates double jeopardy. We disagree. As we have indicated, the basis for the robbery of S.S. was the use of her credit card to purchase gasoline and the taking of her cash. Proof of each of the offenses (aggravated kidnapping of S.S. and armed robbery of S.S.) required the presentation of additional facts which were not required for proof of the other offense; and the evidence necessary to support the conviction for either of these two offenses would not have been sufficient to support the other charge. See State v. Deslatte, 610 So.2d 947, 951-52 (La.App. 1st Cir.1992). Thus, the prosecution of defendant for both aggravated kidnapping of S.S. and armed robbery did not violate double jeopardy.
In connection with the state's appeal of the granting of the motion to quash the aggravated rape counts, the state maintains venue for the rape charges was appropriate in East Baton Rouge Parish because the elements of threatening the victims with bodily harm and being armed with a dangerous weapon began in that parish. In response, defendant appears to argue that only the threats and force which occurred in Bossier City were elements of the offenses of aggravated rape. Defendant maintains that none of the elements of aggravated rape occurred in East Baton Rouge Parish.
Rape is defined as "the act of anal or vaginal sexual intercourse with a male or female person committed without the person's lawful consent." La.R.S. 14:41(A). For the purposes of this case, aggravated rape is defined as "a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed ... [w]hen the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution" or "[w]hen the victim is prevented from resisting the act because the offender is armed with a dangerous weapon." La.R.S. 14:42(A)(2) & (3).
As the state argues in its brief, the abduction, threats, fondling, and sex were one continuous transaction, although occurring at more than one location. During the trip, defendant told the victims that he had been rejected by women and that the victims also would have rejected him had he not been armed. The elements of "threats" and being "armed with a dangerous weapon" were present from the outset in Baton Rouge and were relevant when the victims later were "prevented from resisting" the rapes in Bossier City. Thus, we find that an "act or element" of the aggravated rapes occurred in East Baton Rouge Parish. See La.Code Crim.P. art. 611, comments (b) & (d). The court erred when it quashed the prosecution of defendant for two counts of aggravated rape in East Baton Rouge Parish. The state's assignment of error has merit.

INTRODUCTION OF OTHER CRIMES EVIDENCE
In the second assignment of error, defendant argues the court erred when it overruled his objection to the state's reference to other crimes evidence. Defendant claims the state should not have been allowed to refer to the rapes which occurred in Bossier City after the court had quashed the prosecution of those counts. In response, the state argues the evidence was admissible as res gestae because the aggravated rapes were "inseparately intertwined" with the aggravated kidnappings and armed robbery.
Generally, evidence of criminal offenses other than the offense being tried is inadmissible as substantive evidence because of the substantial risk of grave prejudice to the defendant. State v. McDermitt, 406 So.2d 195, 200 (La.1981). Citing La.C.Ev. art. 404(B)(1), the state argues the rapes were admissible as an integral part of the aggravated kidnapping offenses.
Article 404(B)(1) of the Code of Evidence authorizes the admission of evidence of other crimes, wrongs, or acts when the evidence "relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding." In State v. Brewington, 601 So.2d 656 (La.1992) (per curiam), the Louisiana Supreme Court indicated its approval of the admission of other crimes evidence, under this portion of article 404(B)(1), "when it is related and intertwined *57 with the charged offense to such an extent that the state could not have accurately presented its case without reference to it." 601 So.2d at 657. See also State v. McGuire, 577 So.2d 1120, 1123-24 (La.App. 1st Cir.), writ denied, 581 So.2d 704 (La.1991).
In the instant case, the aggravated rape offenses occurred during the course of the aggravated kidnapping offenses and were an integral part of the kidnappings. As discussed below in connection with our treatment of defendant's fourth assignment of error, the rapes were facts showing defendant forced the victims to give up something of value in order to secure their release. Defendant's assignment of error is without merit.

DENIAL OF MOTION FOR MISTRIAL
In the third assignment of error, defendant contends the court erred when it refused to grant his motion for mistrial which was filed after the court's instructions to the jury concerning the opening statements of counsel.
After defendant's opening statement, the court instructed the jury that the statements of law and facts presented by the prosecutor and defense counsel in the opening statements were not evidence and were the opinions of counsel. Defendant objected to the court's instruction and moved for a mistrial. He argued that the timing and tone of the court's instruction implied the court disapproved of the defense opening. In denying the mistrial request, the court explained that it normally gave the particular instruction before the opening statements but, because it had forgotten to do so, it waited until both sides had completed the opening statements.
After reviewing the court's instruction, we find no indication that either the timing of the instruction or the court's language gave any indication the court disapproved of the positions stated by defense counsel in his opening statement. Defendant's assignment of error is without merit.

INSUFFICIENT EVIDENCE
In the fourth assignment of error, defendant argues the evidence did not support his convictions for aggravated kidnapping. Defendant specifically claims the state presented no evidence he had any intent to ransom the victims or require someone to give up something of value in order for the victims to be released.
In reviewing claims challenging the sufficiency of the evidence, this Court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). See also La.Code Crim.P. art. 821(B); State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988).
As expressed in State v. Arnold, 548 So.2d 920 (La.1989), when the state relies upon the "forcible seizing" provision of the aggravated kidnapping statute, the state is required to prove the following elements to establish the offense:
1. the forcible seizing and;
2. the carrying of any person from one place to another (the asportation element);
3. with the intent to force the victim, or some other person, to give up anything of apparent present or prospective value (the extortion element);
4. in order to secure the release of that person.
548 So.2d at 923. See also La.R.S. 14:44(1).
Defendant does not contest the state's proof of the first and second elements. After reviewing the trial testimony, we find the state sufficiently established all the elements necessary to prove aggravated kidnapping.
The state established the third element with proof defendant intended to force the victims to drive him to Shreveport and to engage in sexual relations with him. The transportation and the sexual relations independently support a finding that defendant intended to force the victims to give up something of value. As we indicated in State v. James, 459 So.2d 1299, 1313 (La.App. 1st Cir.1984), writ denied, 463 So.2d 600 (La. 1985), the phrase "anything of apparent present *58 or prospective value" includes the situation where an offender forces a victim to transport the offender to a particular location. From the initial confrontation in the restaurant parking lot, defendant displayed his intent to force the victims to drive him to Shreveport. In Arnold, the supreme court stated that the seizure of a victim with intent to commit rape constitutes intent to force the victim to give up something of value for purposes of the aggravated kidnapping statute. 548 So.2d at 923. During the trip, defendant showed his intent to rape the women. He fondled them and told them he had been rejected repeatedly by women in the past and that they also would have rejected him had he not been armed with a gun. He also refused their offer for him to just take the car and leave them on the side of the road. Accordingly, the state presented sufficient evidence that defendant intended to force the victims to give up anything of apparent present or prospective value.
From our review of the record, we also conclude the clear implication of defendant's behavior was that the victims would be released safely only if they submitted to all of his demands. Thus, we find sufficient evidence of the fourth element. As the court indicated in Arnold, the relevant factor in applying the fourth element of aggravated kidnapping is "not whether the kidnapper explicitly communicated to the victim that performance of sexual acts [the giving of something of value] would result in his or her release, but whether the kidnapper intended to extort sexual gratification from the victim by playing upon the victim's hope for release." 548 So.2d at 924. In the instant case, the victims reasonably believed they would not be released safely unless they drove defendant to Shreveport and complied with his demand for sexual gratification upon arrival at the motel. Defendant argues that, because there is no evidence from the outset of the abduction that he intended to rape the women, the sexual intercourse was not given up by the victims in order to secure their release. In support of this argument, defendant cites testimony of the victims to the effect that defendant never said or did anything during the trip which led them to believe he was going to rape them. However, to establish the fourth element (insofar as the sexual relations were concerned), the state was not required to establish that defendant communicated at any time his intent to release the victims upon their compliance with his demands for sexual gratification. In Arnold, the supreme court explained:
Thus, the crucial question in determining whether an aggravated kidnapping has occurred is not whether the defendant had intent to release the victim at either the outset of the crime or indeed at any point during the crime. The more important question and the issue to be focused upon is whether the defendant sought to obtain something of value, be it sex or money or loss of simple human dignity, by playing upon the victim's fear and hope of eventual release in order to gain compliance with his demands.
548 So.2d at 925.
After reviewing the evidence in the light most favorable to the prosecution, we believe any rational trier of fact could have found the essential elements of the crime of aggravated kidnapping were proven beyond a reasonable doubt. The assignment of error is without merit.

EXCESSIVE SENTENCE
In the fifth assignment of error, defendant asserts the sentences imposed upon him are excessive. Defendant does not contest the legality of the life sentences imposed for the aggravated kidnapping convictions; nor does he challenge the length of the sentence imposed for the armed robbery conviction. Instead, he asserts the court erred by imposing consecutive sentences.
Defendant was sentenced on April 6, 1992. Thus, the new sentencing guidelines (effective January 1, 1992), including the guidelines regulating the imposition of concurrent and consecutive sentences (see 18 La.Reg. 44, § 215 (Jan. 20, 1992)) were in effect. See 1991 La.Acts, No. 22, § 1 & No. 38, § 3. Although the trial court did not indicate its compliance with the sentencing guidelines, for the reasons which follow, we reject the assignment of error.
Defendant did not file a motion to reconsider the sentences nor did he object *59 to the trial court's failure to apply the sentencing guidelines. The failure to file or make a motion to reconsider sentence precludes a defendant from raising an objection to the sentence on appeal, including a claim of excessiveness. La.Code Crim.P. art. 881.1(D) (effective Jan. 31, 1992). See State v. Myles, 616 So.2d 754 (La.App. 1st Cir.1993). See also La.Code Crim.P. art. 881.2(A)(1). Thus, defendant is barred procedurally from having the assignment of error reviewed.

PATENT ERROR
In reviewing the record for patent error, we have found error in the sentences. Although the minute entries indicate the court credited defendant with time served, the transcript shows the court did not give defendant credit for time served. See La. Code Crim.P. art. 880. Accordingly, we amend the sentences to reflect that defendant is to be given credit for any time served prior to execution of his sentences. Resentencing is not required. However, we remand the case and order the district court to amend the commitment and the minute entry of the sentencing to reflect that defendant is to be given credit for time served. CONVICTIONS AND SENTENCES FOR AGGRAVATED KIDNAPPING AND ARMED ROBBERY AS AMENDED ARE AFFIRMED AND REMANDED WITH ORDER; RULING ON MOTION TO QUASH AGGRAVATED RAPE COUNTS REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.