Welch, J.
*318 The grand jury of East Baton Rouge Parish indicted the defendant, Demarcos Gross, with second degree murder, a violation of La. R.S. 14:30.1. The defendant pled not guilty. The defendant filed a motion to quash, on the grounds of improper venue, contending that no act or element of the alleged second degree murder occurred in East Baton Rouge Parish. Following a contradictory hearing, the trial court granted the defendant's motion to quash. The State of Louisiana now appeals the trial court's ruling. For the following reasons, we affirm the trial court's granting of the defendant's motion to quash.
BACKGROUND
Because there is not yet testimony regarding the underlying events at this point in the litigation, these facts are taken from various Baton Rouge Police Department ("BRPD") reports included in the record on appeal. After being dispatched to a report of a suspicious vehicle, BRPD officers discovered the body of Clifton Walker, III, at approximately 9:56 a.m. on November 1, 2012, in the trunk of his 2010 white Dodge Challenger, which had been parked behind a barber and salon business located at 4585 Evangeline Street in East Baton Rouge Parish. Emergency Medical Services ("EMS") pronounced Walker dead on the scene, and BRPD officers noted that Walker had suffered injuries to his upper torso and back. The officers noted significant front-end damage to Walker's vehicle and viewed blood on the front and passenger-side wheel wells, on the side panels of the vehicle, and in the vehicle's interior. The investigation revealed that Walker was possibly run over with his own vehicle. The officers also noted that there was fire damage to the interior of Walker's vehicle and discovered paper materials on the ground near the gas tank, which were consistent with attempts to ignite the vehicle on fire. The officers also noted that Walker's cell phone had been removed from his pocket.
Forensic examination of Walker's body indicated extreme blunt trauma to his upper torso and head, specifically "[m]ultiple blunt force injuries consistent with roll over by a vehicle, including: ... [m]ultiple cutaneous surfaces of body[,] ... [c]rushing crainocerebral [sic ] and facial injuries[, and] ... [c]rushing injuries of torso, with displacement of major organs and depression of flail chest formation of thorax." The forensic pathologist noted that while those wounds would have been fatal, the trauma to Walker's head and neck areas would have been the "most fatal" of his injuries.
During their investigation of Walker's death, BRPD detectives spoke to a neighboring resident of the business located at 4585 Evangeline Street-where Walker's vehicle and body were found-who noticed a car parked suspiciously close to the business at approximately 2:30 a.m. on the morning of November 1, 2012. The witness initially thought the vehicle was a police car. After she left her residence to get gas and returned home, she was concerned to see the car was still parked behind the business. The witness viewed a young male *319 standing near the trunk of the vehicle, pacing back and forth. Wary of the man's intentions, the witness summoned her son-in-law to come out from inside her home. They both observed the man pacing near the vehicle and saw that the interior was now on fire. The witness's son-in-law observed a second male standing on the opposite side of the business, apparently acting as a lookout for the first man. Both men fled on foot after the fire started inside the vehicle. The witnesses called 911 to report the vehicle fire, but said that no one responded to the call.
At approximately 7:00 p.m. on November 1, 2012, Oscar Parker, Jr., located in Baker, Louisiana, contacted BRPD detectives in reference to property that had belonged to Walker. Parker told police he was approached by the defendant asking if he knew how to "wipe" a cell phone. Parker stated that he did, and the defendant offered to sell him an iPhone. Parker purchased the iPhone from the defendant, activated it, and discovered that the iPhone had belonged to Walker, who Parker learned had recently been killed. Parker initially sought to return the iPhone to the defendant, but unable to locate him, Parker gave the iPhone to the defendant's grandmother, Joyce Jackson. When BRPD detectives contacted Jackson, she was very cooperative and returned the iPhone to the detectives. Jackson stated that the defendant had returned home with an iPhone that he said he later sold to Parker. Jackson also gave the detectives the clothes the defendant was wearing upon his return home earlier in the day.
BRPD detectives also spoke with the defendant's uncle, Darryl Sheppard. Sheppard told the detectives that he played video games with the defendant until about 7 p.m. on the night of October 31, 2012. Sheppard noted that the defendant left his house, returned briefly at about 10:00 p.m., left his house again, and did not return until about 4:00 a.m. on November 1, 2012. The defendant told his uncle he had visited an unidentified female's residence located nearby. Sheppard described the defendant's demeanor as "strange and unfocused" and indicated that the defendant was very concerned about how he smelled, so Sheppard gave the defendant some cologne. Sheppard also observed the defendant with an iPhone with a cracked screen that he had never seen the defendant with before. Sheppard also told the BRPD detectives that the defendant had been concerned with getting money to repair his own vehicle and obtain insurance, and had been eagerly awaiting his tax return. However, later in the day on November 1, 2012, the defendant returned to the home with a fixed and insured vehicle.
Though the defendant was questioned several times by police, it was not until his fourth interview over two years later that he revealed he was involved in Walker's killing.[1] According to the defendant, he, another individual named "Chris," and Walker were in Walker's vehicle headed to an address in Slaughter, Louisiana, which is located in East Feliciana Parish. Once they left that address, the defendant stated that "Chris" struck Walker in the head with a hammer. Walker jumped out of the vehicle, and the defendant claimed "Chris" got into the driver's seat and ran over Walker with his own vehicle. After "Chris" struck Walker in the head a few more times with the hammer, the defendant said he and "Chris" put Walker into the trunk. Defendant said he thought Walker was already dead because he was "bleeding a *320 lot." Defendant brought police to the location "Chris" allegedly ran over Walker, and detectives found pieces of a vehicle matching Walker's 2010 white Dodge Challenger in the brush on the side of the road, together with dirt matching some found on the vehicle's underside. Defendant also brought detectives to the Comite River Bridge on Port Hudson-Pride Road where the defendant asserted "Chris" threw the hammer into the river. The location where the defendant says Walker was run over, 1513 Scott Barr Road, is alleged to be about 100 yards into East Feliciana Parish.
LAW AND DISCUSSION
In its sole assignment of error, the State contends the trial court erred in granting the defendant's motion to quash on the grounds of improper venue. The State argues that the trial court improperly found that Walker's murder occurred in East Feliciana Parish because neither the coroner's report nor any testimony suggests a precise location or time of death. In support of this argument, the State also highlights that the defendant took several actions related to the murder that took place in East Baton Rouge Parish, such as selling the victim's iPhone, setting the victim's car on fire, and riding with the victim in the victim's car.
In response, the defendant argues that the State provided no evidence that any part of the actual act of second degree murder occurred within East Baton Rouge Parish. Instead, the defendant urges the entire "transaction" of Walker being run over with his own vehicle took place at 1513 Scott Bar Road, which is located in East Feliciana Parish. The defendant contends that the car parts allegedly found at 1513 Scott Bar Road are the only evidence indicating where the actual murder took place.
Louisiana Code of Criminal Procedure article 611 governs the jurisdiction and venue of criminal trials. Article 611 provides, in pertinent part:[2]
A. All trials shall take place in the parish where the offense has been committed, unless the venue is changed. If acts constituting an offense or if the elements of an offense occurred in more than one place, in or out of the parish or state, the offense is deemed to have been committed in any parish in this state in which any such act or element occurred.
B. If the offender is charged with the crime of first or second degree murder and it cannot be determined where the offense or the elements of the offense occurred, the offense is deemed to have been committed in the parish where the body of the victim was found.
Where a body is found, and it is unknown where the actual killing took place, proper venue is in the parish where the body of the victim was discovered. See State v. Surratt, 2005-1406 (La. App. 3 Cir. 6/7/06), 932 So.2d 736, 750-51, writs denied, 2006-2100, 2006-2102 (La. 6/1/07), 957 So.2d 165.
Venue is not an essential element of the offense; rather, it is a jurisdictional matter. See La. C.Cr.P. arts. 611(A) and 615. Objections to venue must be raised by a motion to quash to be ruled on by the trial court in advance of the trial. La. C.Cr.P. art. 615 ; State v. Roblow, 623 So.2d 51, 55 (La. App. 1 Cir. 1993). At the hearing, the burden is on the State to prove venue by a preponderance of the *321 evidence. Id. Former La. R.S. 15:13 provided that venue was proper where a "substantial element" of the offense was committed, which required that a "material element" take place in that parish. In adopting the "act or element" test contained in the last sentence of La. C.Cr.P. art. 611(A), the Louisiana Legislature rejected the "substantial element" test used in previous legislation. Roblow, 623 So.2d at 55. However, La. C.Cr.P. art. 611 does not simply refer to any act related to the offense; it refers to "acts constituting an offense" or the "elements of an offense." The place where the effect of the criminal conduct occurs is an important consideration in determining whether the charged criminal acts have substantial contacts with the venue chosen for prosecution. See State v. Hayes, 2001-3193 (La. 1/28/03), 837 So.2d 1195, 1199 (per curiam ).
Critically, venue is a factual question and, on appeal, review is limited to whether the State submitted some evidence of proper venue. State v. Skipper, 387 So.2d 592, 594 (La. 1980). As such, "review of the issue on appeal is not concerned with weighing the sufficiency of the evidence" presented by the State. State v. Cupit, 508 So.2d 996, 1001 (La. App. 2 Cir.), writ denied, 514 So.2d 1174 (La. 1987). Finally, a trial court's ruling on a motion to quash is discretionary, and should not be reversed absent a clear abuse of discretion. State v. Love, 2000-3347 (La. 5/23/03), 847 So.2d 1198, 1206, 1208.
Though it does so with less clarity on appeal,[3] the State argued at the contradictory hearing on the defendant's motion to quash that the continuing nature of the events leading to the ultimate death of Walker[4] and his subsequent discovery in the trunk of his car an uncertain amount of time later renders any parish passed through in the vehicle to be proper venue. In support, the State cites Roblow, 623 So.2d 51, and State ex rel. Puderer v. State, 2015-1359 (La. 10/17/16), 202 So.3d 978 (per curiam ). Both of those cases are distinguishable from the instant appeal, however, because the evidence in those cases clearly established that acts or elements constituting the charged offenses definitively began in one parish and continued until the crimes were completed in another parish.[5] Moreover, the defendant *322 is correct when arguing that the discrete transaction of the second degree murder of Walker possibly could have happened over a much shorter time frame and could have been completed in East Feliciana Parish before the defendant and "Chris" returned to East Baton Rouge Parish. Consequently, La. C.Cr.P. art. 612[6] is not applicable in the instant case where the State is unable to show by a preponderance of the evidence that any elements of the offense occurred in the vehicle while traveling in East Baton Rouge Parish.
We cannot say the trial court erred when finding the preponderance of evidence presented by both the State and the defendant showed that the murder occurred in East Feliciana Parish. It is uncontested that Walker was struck by his vehicle far enough inside East Feliciana Parish as to not warrant application of La. C.Cr.P. art. 614.[7] Similarly, there is no indication the murder was an ongoing event taking place in the victim's vehicle over several parishes, thus, La. C.Cr.P. art. 612 is inapplicable. Instead, venue was proper in East Baton Rouge Parish when the charges were initially filed against defendant and, at that time, there was no indication as to where the victim's murder took place. Where "it cannot be determined where the offense or the elements of the offense occurred," venue is proper where the body is found. La. C.Cr.P. art. 611(B). However, given the evidentiary admissions at the motion to quash hearing, once the trial court determined that a preponderance of the evidence factually showed the offense of second degree murder *323 more likely than not occurred in East Feliciana Parish, the situs of venue was statutorily removed from East Baton Rouge Parish under La. C.Cr.P. art. 611(B) and transferred to East Feliciana Parish under La. C.Cr.P. art. 611(A).
Based on the investigating officer's discussions with the forensic pathologist, the "massive trauma to the head and neck areas" of Walker was the "most fatal" of his injuries. Moreover, damaged car parts from the victim's vehicle were found in the location at which the defendant brought detectives to illustrate his version of events transpiring in East Feliciana Parish. Given that venue is a question of fact, and the fact-finder's determination is afforded great discretion, the State fails to show a clear abuse of that discretion in the trial court's granting of the defendant's motion to quash. Accordingly, we affirm the trial court's granting of the defendant's motion to quash.
MOTION TO QUASH AFFIRMED.

Though the State references these prior interviews in its brief on appeal-including one in which the defendant allegedly admitted to striking Walker in the head with a bottle-there is nothing in the record on appeal confirming prior interviews.

We apply the version of La. C.Cr.P. art. 611 in effect at the time of the offense. Article 611 has since been amended-most recently through 2018 La. Acts 125, § 1, with an effective date of August 1, 2018. None of the modifications are relevant to the instant appeal.

Contrary to the defendant's assertion, the State is not raising a new objection on appeal, but is apparently attempting to clarify arguments it had already made below. See State v. Butler, 2012-2359 (La. 5/17/13), 117 So.3d 87, 89 (per curiam ), cert. denied. 572 U.S. 1064, 134 S.Ct. 1879, 188 L.Ed.2d 918 (2014) (a new basis for an objection may not be urged for the first time on appeal).

The State reasoned that the defendant's act of driving the victim around without obtaining medical attention, and subsequently setting the car on fire, constituted a "continued act" in the criminal transaction taking place in East Baton Rouge Parish. See La. C.Cr.P. arts. 611, comments (c) and (d), and 612.

In Roblow, the defendant was indicted by the East Baton Rouge Parish grand jury with two counts of aggravated kidnapping, two counts of aggravated rape, and one count of armed robbery. Roblow, 623 So.2d at 53. The defendant kidnapped two victims in East Baton Rouge Parish, forced the victims to drive him to Bossier Parish where he raped them, forced the victims to stop and use a credit card to buy gas along the way, and then forced the victims to drive him to Shreveport where he made them stop the vehicle, stole money from them, and drove away. Id. at 53-54. Prior to trial, the defendant filed a motion to quash the aggravated rape counts and the armed robbery count, arguing that venue for those crimes was improper in East Baton Rouge Parish because none of the elements of those crimes occurred in East Baton Rouge Parish. Id. at 55. The trial court quashed the aggravated rape counts, but denied the motion as to the armed robbery count. The appellate court affirmed the trial court's ruling as to the armed robbery count, holding that the evidence established that the armed robbery crime began in East Baton Rouge Parish and continued until the crime was completed in the other parish-the elements of "use of force or intimidation" and "while armed with a dangerous weapon" began in East Baton Rouge Parish and continued until the crime was completed in another parish. Id. at 55. As to the aggravated rape counts, the appellate court reversed the trial court's ruling, finding that the evidence established that an act or element of the aggravated rapes occurred in East Baton Rouge Parish-the elements of "threats" and being "armed with a dangerous weapon"-were present from the outset in East Baton Rouge Parish and were relevant when the victims later were "prevented from resisting" the rapes in Bossier Parish. Thus, venue was proper in East Baton Rouge Parish. Id. at 56.
In Puderer, the defendant was charged with two counts of second degree kidnapping and two counts of forcible rape, to which he pled guilty and was sentenced on each count to twenty years at hard labor. The defendant did not appeal, but later filed a counseled and a pro se application for post-conviction relief. Puderer, 202 So.3d at 980. Therein, the defendant claimed the State had no evidence to prove that the second degree kidnapping (count 3) occurred in Orleans Parish; however, the supreme court found that the record showed that the victim of that count was alleged to have been taken from the French Quarter, which is located in Orleans Parish. Id. at 981. The defendant also claimed that the trial court lacked subject matter jurisdiction over the forcible rape (count 4), arguing that the victim could not identify the exact location where she was raped. The supreme court found that the evidence showed that the elements of forcible rape-"threats" and/or "without the lawful consent" of the victim-were present from the outset of the kidnapping in Orleans Parish and relevant when the victim was later prevented from resisting the rape. Thus, the crime of forcible rape occurred in Orleans Parish. Id. at 983.

Louisiana Code of Criminal Procedure article 612 provides that "[i]f an offense is committed on a ... private vehicle while in transit in this state and the exact place of the offense ... cannot be established, the offense is deemed to have been committed in any parish through or over which the ... vehicle passed, and in which the crime could have been committed."

Louisiana Code of Criminal Procedure article 614 provides that "[a]n offense committed on the boundary line of two parishes or within one hundred feet thereof is deemed to have been committed in either parish."